UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 22-cr-20104-JEM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

Miami, Florida
April 4, 2023
Pages 1-40

ARCANGEL PRETEL ORTIZ and
RODOLPHE JAAR,

Defendants.

---

TRANSCRIPT OF GARCIA HEARING
BEFORE THE HONORABLE JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF: Monica K. Castro, A.U.S.A.
US Attorney's Office
99 Northeast 4th Street
Miami, FL 33128

FOR DEFENDANT PRETEL ORTIZ:
Michael Caruso, A.F.P.D.
Julie Holt, A.F.P.D.
Federal Public Defender's Office
150 West Flagler Street
Miami, FL 33130

FOR DEFENDANT JAAR: Frank Schwartz, Esq.
Frank Schwartz, P.A.
100 North Biscayne Blvd.
Suite 1300
Miami, FL 33132

TRANSCRIBED BY: DAWN M. SAVINO, R.P.R., C.R.R.
Official Federal Court Stenographer
400 N. Miami Avenue, 10S03
Miami, Florida 33128
Telephone: 305-523-5598
Dawn_Savino@flsd.uscourts.gov

**PROCEEDINGS RECORDED BY COURTROOM DIGITAL AUDIO RECORDER**
**TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY**
**AND COMPUTER-AIDED TRANSCRIPTION**

P-R-O-C-E-E-D-I-N-G-S

THE COURT: ...all the hybrid counsel, it does. Like it just -- it complicates things from a practical point of view that is of no concern really to Mr. Ortiz or Mr. Jaar, and quite frankly not even very much to the Court, it's an issue more for the lawyers that are on the case. So I really want to hear you speak to this issue that Ms. Garcia makes -- I'm sorry, Ms. Castro makes now with respect that the conflict is actual, I have to infer that the confidences -- that there were confidences exchanged, and what's your position with respect to that.

MR. CARUSO: So the cases, as Your Honor pointed out, are not, one, entirely clear, and do occur in many, many different circumstances. You know, I, in being candid with the Court which I always am, I think the best path for the Court to take is to appoint a CJA lawyer, and that way this is not an issue at all and we can just manage -- we can just manage the case in the way I suggested. I think that's the cleanest way to handle it, and that would be our ultimate position.

THE COURT: Right. But again, to the point -- I need you to answer my question -- to the point of whether or not the representation is that a confidence was exchanged with Mr. Padilla. Unfortunately you may or may not remember that the recording was not working when Mr. Schwartz proffered things to the Court sidebar, so I want to make sure that -- because our memories are what's at issue now -- is what Mr. Schwartz said. And so the question was, and I think it was unclear, based on what he did say as to whether or not a confidence was exchanged. What was described was he reviewed, right, or I don't think it was reviewed, I understood him to

say he had the complaint with him, showed him, right, the complaint which is in keeping with what you put in your response that Mr. Padilla says happened. I didn't necessarily see a conflicting story there. But if there's a conflicting issue, then what's the Public Defender's position as to how and whether I should resolve that?

MR. CARUSO: So, I'm not quite sure there's a conflicting position. You know, what I know for certain, you know, derives from my communication with Mr. Padilla, you know, both way back initially when this matter first arose, and then subsequently after, you know, after our first hearing. And he is adamant, not only based upon his own recollection, but we shipped the file to him in Washington and he reviewed it and he remains steadfast that no substantive confidential information was discussed between him and Mr. Jaar. And certainly there's no confidential information that remains in our office given Mr. Padilla's departure from over a year ago.

With regard to what Mr. Jaar, or Mr. Schwartz on behalf of Mr. Jaar, proffered to the Court at the first hearing, I don't exactly recall and Mr. Schwartz may be the best reporter of that.

THE COURT: I don't recall Mr. Schwartz saying that his client shared any kind of admissions with Mr. Padilla and what --

MR. CARUSO: In any event, like I said, I don't specifically recall but, you know, the fact is that Mr. Jaar has pled guilty. I've reviewed a transcript of the change of plea colloquy. Certainly he makes admissions there that go far beyond what were contained in the complaint.

THE COURT: That's neither here nor there.

MR. CARUSO: Right.

THE COURT: That's going to be neither here nor there. The issue is whether or not he shared any admissions, if you will, with Mr. Padilla. The description that you provided the Court as to what Mr. Padilla was told is of he did not have any discussion with Mr. Jaar as to what he did or did not do. In other words, there was no discussion with respect to the facts of the case.

MR. CARUSO: Yes, that's our position based on my conversations with Mr. Padilla.

THE COURT: Right. I didn't see -- when I saw that response, in my own mind, from my own recollection I did not find that to be conflicting to what Mr. Schwartz had said. We didn't know whether or not Mr. Padilla, reviewing his file or the additional fact that he had the complaint with him would have changed his mind or refreshed his recollection in any way.

Donna, it's freezing in here. I'm sorry. It's freezing.

So what is your position with respect to what the Court should do? Is Mr. Schwartz now going to tell me that his client's recollection of Mr. Padilla's conversation in fact conflicts with his client's?

MR. CARUSO: You know, you know, I think the two options I would propose would be to leave it at that, or question Mr. Padilla. You know, the prosecutor is right, for however briefly we represented Mr. Jaar we still owe him a duty of loyalty, so I'm not going to suggest to the Court that you put him under oath to question him about these matters.

THE COURT: Right. The duty of loyalty, I think, is what it is. It's there, there's no doubt about that. If there's confidential information, then I'm much more concerned or would be concerned with that

because then there's the issue of whether or not a co-counsel really addresses that, because can a co-counsel really be effective if he doesn't have -- if he's not been given certain information or if the Public Defender's Office somehow feels constrained in assisting their co-counsel I guess would be the issue, although I don't really see that either because it would be the same thing if the PD wasn't around.

MR. CARUSO: Yeah. And just to be clear, under our view of, you know, partnering with a CJA lawyer, it's not as if we couldn't review all the discovery related to Mr. Jaar. That doesn't breach a duty of loyalty, and then that's not a conflict. It's just the act of cross-examining him in court or getting up in closing argument and calling him a liar.

THE COURT: Okay. All right.

Mr. Schwartz, do you have anything to add?

MR. SCHWARTZ: Yes, Judge. I'll just refresh the Court's memory. When we went sidebar I did ask for the break so that I could speak to my client, and the new information that I received, because I just didn't really speak to my client about it in detail, was that they did review the complaint when he initially met with Mr. Padilla. Now, obviously I'm not asking for this Court to have an evidentiary hearing as to what happened between my client and his previous attorney. I think that's the whole point of this case law that's out there.

THE COURT: I suspect you wouldn't want that.

MR. SCHWARTZ: No. Right, Judge, because I think that's the whole point of the case law is that when there is a conflict, it's to avoid these scenarios.

THE COURT: Right. The problem is that this case is in a very different posture because it's just a very different scenario, right? I'm not at a 2255, I wouldn't call your client for that purpose, and Mr. Ortiz, I don't think, would be able to, and I think that's what the case law suggests. Your representation that the complaint was reviewed with your client, like I said, is entirely consistent, I believe, with Mr. Padilla's representation that he didn't make any admissions. Like I said, I think at the end of the day it's going to be neither here nor there, but I do think that there's a sufficient record at this point that outlines to me that this factual pattern is very distinct and different than what the Government has pointed to.

Anything further?

MR. SCHWARTZ: No, Judge. I would just add that there was an exchange of e-mails between the three of us, and it appears that the Government had found e-mails between the Government and Mr. Padilla scheduling debriefs before I came onboard. So I think that lends credence to the fact that they discussed things beyond just talking about the family, talking about the process.

THE COURT: Yeah, we went through that already. That's the discussions that Mr. Padilla had with the Government, not discussions that Mr. Padilla had with his clients. So again, I don't know when those e-mails were exchanged. You know, I'm trying to establish a record here, and I'm going to rule now because I think at this point the record is what the record is. Actually before I rule, does the Government have anything in response?

MS. CASTRO: Your Honor, I did just want to clarify the one point because I know Mr. Caruso had mentioned that I was not perhaps as articulate as I could have been when I was discussing the cross-examination point as to other witnesses.

The point that I was trying to make, and I'll try it again now, is that Mr. Jaar is in a position to provide testimony on the conduct of quite a few people, and that testimony as to those people would incriminate Mr. Ortiz; which is to say that the representation of Mr. Ortiz would involve discrediting evidence as to all these other individuals and the actions that they took, which would be an exercise that would go beyond just cross-examination of Mr. Jaar. There is going to be evidence of the crimes that other co-conspirators engaged in, and Mr. Ortiz would have an interest in saying that certain co-conspirators didn't do certain things because if they did certain things, it acts to incriminate his credibility.

THE COURT: I get that, I understand that, but I don't see how the prior representation of Mr. Jaar affects the cross-examination of those witnesses unless, of course, those are other witnesses the Public Defender's Office represented, which you're telling me they're not.

MS. CASTRO: It was just going to the duty of -- the question of the duty of loyalty, and the task of having to potentially discredit Mr. Jaar's testimony even in the course of other evidence being presented and other witnesses testifying in a manner that corroborates Mr. Jaar's testimony.

THE COURT: Okay. All right. So I'm going to start with the facts, because I think that's where we have to start. I don't think, by the

way, that the law is in any serious dispute. When I look at the Supreme Court case US v (unintelligible), which I think both parties cite, of course a defendant in a criminal case has a Sixth Amendment Constitutional right in all criminal prosecutions enjoys, of course, the right to the assistance of counsel. Of course his right to counsel of choice is not unlimited, right? It's circumscribed by a number of things, and it may be circumscribed, as the Government in this case suggests it should be, by whether or not his counsel of choice had a previous or ongoing relationship with an opposing party or in this case with a witness. Federal courts certainly -- and again, I'm citing from (unintelligible) have an independent interest in assuring that criminal trials are conducted within the ethical standards of the profession, and that legal proceedings appear fair to all those who observe them.

Both parties, I believe, cited to Smith v Wright, and I'm also relying on US v Ross. When the first motion for Garcia was filed, it was filed as if there had been a concurrent representation. Certainly that was the procedural posture of the case, even though the Government well knew that that wasn't going to be the procedural posture of the case. The Garcia motion was initially filed as if it were a concurrent issue, which it's not. It was, I don't think, ever that. It's a little bizarre that that motion would have been filed in that way because it's taken now three hearings and a month to be where we should have been, quite frankly, back in February and where the Government should have been when Mr. Palacios entered his first appearance. Because whether or not the Public Defender's Office had a conflict with respect to witnesses, I haven't heard any reason why that had

not been vetted by the Government well before Mr. Palacios' initial appearance, or for that matter why it wasn't vetted before Mr. Ortiz came into the picture almost a month and a half -- I'm sorry, a year later, right? Because, I mean, it was -- Mr. Palacios made his initial appearance in January of '22. I'm sorry. It's only about a month later that they come to that.

In any event, when we look at Smith v Wright, obviously the court there instructs us that the view that we look at with successive representations is different, right? Because it's much more difficult to prove that successive representation caused an actual conflict of interest than a simultaneous representation. So a simultaneous representation puts us in a different context. Successive representation really draws our attention to two issues, right? Whether the early representation of the witness was substantially and particularly related to counsel's later representation of the defendant, or whether counsel actually learned particular confidential information during the prior representation that was relevant to the defendant's later case. In other words, is there an inconsistent interest.

The Eleventh Circuit in Ross, I think, also goes through that pretty carefully and examines whether or not the subject matter, of course, of the first representation is at issue, this is the same case. I don't think that there's really an issue there, I don't think anybody really argues it's not the same case. But what Ross instructs too is what the court's goal in these examinations is, right? Because one of the things that I think is happening is everybody is throwing in the successive

representation cases into like a big pot of what the standard is and what the court should do, and of course it's a very different procedural posture when there's a motion to disqualify or motion for Garcia than a motion for effective assistance of counsel. You know, we get tidbits as to what a court may or may not or should or should not consider, but it's a different point of view. To the Government's, I think, benefit, the Government didn't even have to prove an actual conflict for a Garcia, right, hearing, or even for disqualification because a potential conflict is enough for both the requirement of a Garcia hearing and for disqualification of counsel. We don't have to get to actual conflict for that.

I now hear that there is at least some concession that there's an actual conflict, because now we all know what I think the Government probably could have proffered to Mr. Caruso at the very least a while back ago which is that they have -- that their representation of Mr. Jaar posed an actual conflict inasmuch as Mr. Jaar is now going to testify specifically with respect to Mr. Ortiz. A lot of the cases the Government cites are pointing to the court's discretion in disqualifying counsel and having appellate courts either agree with the court's decision to disqualify or the court's own discussion as -- orders as to whether or not a lawyer should be disqualified or not. The standard is an abuse of discretion standard as to whether or not Mr. Caruso is disqualified because, of course, the other effective assistance counsel claim that's possible is if I disqualify the Public Defender's service and I don't have a record to do that, Mr. Ortiz can thereafter come later and say I didn't get the counsel of my choice and your disqualification was not well placed. So the ineffective assistance of

counsel, which we're nowhere near at because there's not a conviction, can come from either place, right? Which is why the Court has to rule based on the facts before it, and I can't get too concerned at how an eventual 2255 may play out because it could play out either way.

If I disqualify the Public Defender's service and I had no record to do that, Mr. Ortiz would be able to come to the Eleventh Circuit or to the District Court and then the Eleventh Circuit and say I wasn't given my counsel of choice which was the Public Defender and they were disqualified without a record; in the same vein that he could come back and say the Public Defender's Office didn't represent me the way they should have given what was the concession of the actual conflict.

Many of the cases cited to me also have to do with this particular issue of whether or not the Court can accept the waiver. It's a totally different issue, and we're not even there yet. So it is true that in a situation like this that even if -- and I assume that Mr. Ortiz is going to waive today if I appoint -- even if I appoint a co-counsel, let's assume that Mr. Ortiz waives, I don't have to accept that waiver, right? And it's clear from the case law, and that's the Schaeffer case that I pointed the Government out to when we had our first hearing, it's true that even with a waiver I could disqualify the Public Defender's service, and if an ineffective claim were to come later, I would be well within my authority to disregard the waiver, not accept the waiver and still disqualify. So, you know, we can't just get pieces of cases and say well, that case says this because that case might have been saying that in a completely different context. And honestly, a lot of the cases that I've looked at, the cases

that have been relied on, you know, you'd have to take different pieces of different cases where courts are saying things in completely different contexts to come to the argument that I think the Government is trying to propose here.

So let me go through that, being the lay of the land on the law and what the facts are. So the Public Defender's Office was appointed to represent Mr. Jaar on January 20th. He was appointed, as many times they are here in magistrate court, afternoon duty calendar where the Public Defender's Office insisted that they in fact did not have a conflict, or I think at that point there was some clarification, there was no conflict and they were appointed. Their representation of Mr. Jaar was about six days because by January 26th there was a stipulation to pretrial detention, and by January 27th, Mr. Schwartz had already appeared.

For the next almost year, we do have some other defendants that made initial appearances. The US Attorney's Office took the position that there was a conflict. I assume that that's the conflict with respect to Mr. Jaar, not the conflict with respect to the witnesses, otherwise they never would have been appointed to Mr. Jaar.

On February 14th, I believe over the objection of the US Attorney's Office, Magistrate Louis appointed the Public Defender's Office to represent Mr. Ortiz, and at that point the Public Defender's Office again was appointed to represent Mr. Ortiz. By my reading of the motions and the pleadings in this case, at that point the Government was prepared to tell the Public Defender's Office that Mr. Jaar in fact wasn't waiving anything. I don't see a basis for the Government having said that given that, again,

from what I see in the time line of what was filed, the Government hadn't even spoken to Mr. Schwartz yet about that, and Mr. Schwartz was telling Mr. Caruso that his client, in fact, would waive it.

All of that ends up being neither here nor there.

On the 16th of February the Government filed this Garcia motion, really from the posture that it could be a concurrent representation which, again, you know, wasn't really the posture of the case at the time.

The next day Mr. Ortiz was arraigned. At least with respect to the Public Defender's filings, it looked like he waived any conflict he had in order for that arraignment to take place, although the record doesn't reflect a full Garcia colloquy. It might have happened, I just don't see it on the court record, and so we'll probably have to do that again.

On February 27th the Public Defender's Office responds to the Garcia motion. I had the hearing on the 28th and as I mentioned before, you know, I began the hearing by asking the Government is the Public Defender's representation alone sufficient, and I was told no, that that wasn't the nature of the conflict. And then I asked what information the Government had, and the Government had no information and neither did Mr. Schwartz, which led to the recess which led to the information that Mr. Schwartz proffered sidebar and has now proffered today as to what his client told Mr. Padilla, because at that point I thought that we were all in agreement that it did depend on what Mr. Padilla was told. That if Mr. Padilla was told nothing, that the Government wouldn't be taking the position that it later took. And so I had the two-week recess so that Mr. Padilla could be -- could review his file and can be told of the information that

Mr. Schwartz provided.

The Government filed its supplement the day before the hearing. I've already commented on that at the last hearing. Since I -- not only was it filed the night before, giving Mr. Caruso no time to respond, it also now changed the position. So then the Government's position became it doesn't really matter, it's a new rebuttable presumption, again citing to cases that are dealing with an entirely different legal standard and factual pattern.

And so at that point they went ahead, changed their position as to what created the conflict. They did so again on the same day that the notice of change of plea was filed, and I don't recall the Government mentioning that at all when we had our hearing on the 15th. But in any event, we had the hearing the 15th. I gave the Public Defender time to respond. The Public Defender now has filed this response and maintained in that response that there was no conflict. Of course that's changed because now the Government is giving them additional information and they concede that there is an actual conflict in that.

Now, the Government has represented that Mr. Jaar is going to be a witness against Mr. Ortiz. You know that additional fact is important in a case of this magnitude and with this many defendants because again, in a two co-defendant case, you have one defendant. Government says he's in a cooperative posture. Court says well, who is he cooperating against other than the guy sitting next to him, right? You've got 11 people in a widespread conspiracy, that's not that obvious until someone actually proffers it and someone informs the court or informs counsel of what that witness -- the nature of that conflict might be.

Now, it is relevant because this is a different case, right? The factual proffer is the factual proffer. I mean -- not the factual proffer, the factual posture is the factual posture. This is not a case where we don't know what happened, right, between Mr. Padilla and Mr. Jaar. This is not a case where Mr. Padilla represented Mr. Jaar for a month, two months, three months. It's not a case where Mr. Jaar hired Mr. Padilla, Mr. Padilla makes a permanent appearance as a retained lawyer, and one can assume that of course there were confidences exchanged. Those just aren't the facts, so I can't pretend that what's in front of me is not in front of me so that the case more comfortably fits the cases that have been cited to me. What's in front of me is the Public Defender's Office saying the discussion was about family, the procedure, and the pretrial detention schedule. That is not inconsistent with what Mr. Schwartz represented to me, and as a matter of fact we've all heard even if there is some inconsistency, the Public Defender obviously is not going to take the position that its former client should testify, and Mr. Schwartz would prefer that not to happen, and I'm going to take a wild guess and assume that the Government doesn't really want that to happen either.

And so since nobody appears to want that to happen, what I have is that record, right? That what was exchanged is information about family, the procedure and the pretrial schedule, and that there were no admissions that were made by Mr. Jaar to Mr. Padilla. Of course in my notes here I had that at least as of, you know, the minute before I got on this bench, there wasn't a record that I can rely on to say there was an actual conflict because the Government hadn't submitted anything that would specifically

address that. Now it has, and now there's an agreement by the Public Defender's Office that that poses an actual conflict.

And so now the question is, you know, what do you do about that actual conflict? I would say I can do two things, Right? I could do two things. I could keep the Public Defender's Office and say I don't think that's a sufficient conflict, or I don't think the facts justify disqualification and I think the case law would amply support my decision because it's an abuse of discretion standard, and on this record where the record shows there's no admissions that were given to the Public Defender's Office, I think that that would be one ruling. I'm not going to do that. I don't think that's wise, I don't think it's prudent and I don't think it's necessary.

I could just disqualify the Public Defender's Office, but given this record I'm not going to do that either because I'd be disqualifying the Public Defender's Office when the record I have says that they have no admission from their client, from their first client. They're not going to be harboring under that.

And so the issue really becomes one of the divided loyalty, which is not an significant issue and one that I think the Court could easily cure by having and appointing a co-counsel.

Now, the Government, in its submission, made a number of cases that they suggest show, right, that a co-counsel is not sufficient. I'm going to go through each one of them because none of those cases are even close, nor do they say that.

So the Schneider case is the Judge Moore case that I brought to

the Government's attention in that first hearing, and that was a case in front of Judge Moreno case where Judge Moreno did not accept the waiver because there was a waiver in that case. It was a case where the lawyer had -- the lawyer at issue had had a complete representation of the client, right? And so parsing out that the court found was not necessary, and what the Eleventh Circuit said was that Judge Moreno's decision not to allow co-counsel was not an abuse of discretion. So that certainly doesn't suggest that appointing a co-counsel somehow would be an abuse of discretion and would not be warranted. In fact, I think that case says completely the opposite.

Guererro is a case where the witness at issue continued to be represented by the lawyer.

Garby is a completely different factual scenario where it's a father-daughter, right? And the court specifically there notes that the issues there that you would have in going after a quote, unquote, the witness when you have the familial relationship were considerable and found that the court's decision not to accept a waiver was not an abuse of discretion.

In Campbell the lawyer had represented the witness again in a full matter, right? In a previous representation that was tied to the representation at issue, and it was a full representation, right? That's obviously very different. And there, of course -- that was a waiver case, right? The court doesn't accept the waiver and they're affirmed on an abuse of discretion standard.

In Cordoba the defendant's counsel there was present at

debriefings. We wouldn't be here if Mr. Padilla sat at a debriefing. This would have been over like from the get-go, right? We don't have that here, right?

In DeForm, I think that that was Mr. Petruzzi's case, Mr. Petruzzi had represented the Defendant at sentencing and for a Rule 35. So the kind of information you have to exchange in order to adequately represent somebody in that context is not a 40 minute meeting at FDC where you're talking about the process, the general process and you're told to go back to your office because you're stipulating to pretrial detention.

The Kite case was a motion for reconsideration. And so really the factual pattern in Kite the court didn't even go into much detail as to what the issues were there because the issue that was published was the issue on the motion for reconsideration. But there too the representation had been a significant one, and I don't have that here. And so again, if the facts here were that Mr. Padilla had represented Mr. Ortiz for a month, had represented him for debriefings, if the pretrial detention hearing had been contested, right? Then it's a very different factual matter and whether or not a co-counsel could cure that becomes a much closer question.

Having no record, and again the issue that the Government brings up or the case law the Government brings up on the irrebuttable presumption is a 2255 context where Mr. Ortiz can't be expected to provide evidence, right, of what Mr. Jaar told Mr. Padilla because there would be no way for him to do that. Here I have a record. It is what it is, right? I mean, it's not much of a record, but we do have representations as to what happened, they're not being contradicted, nobody is interested in

contradicting that part of the record and you just look at the time line alone and what happened, right? It seems to me entirely consistent with the representations that are being made by the Public Defender's Office that they didn't receive any admissions, right? They didn't receive any information by Mr. Jaar that would make it difficult for them to continue on the representation.

But that being said, because there's an actual conflict now and it was their former client, they don't want to be in a position where they're cross-examining a former client, the Court doesn't want to see them in that position because I think that's unnecessary and that can easily be cured by co-counsel.

The issue of what co-counsel's, you know, role in the case is, for sure the co-counsel isn't just going to come in, cross-examine the witness and step out. I mean, that's just not how you try a case with somebody. So co-counsel will be -- is going to be appointed, I'm appointing David Howard, David Howard will be appointed. I suspect Mr. Howard will work as a co-counsel, right? For two reasons. One, because that is how, in fact, you represent your client most adequately, so I don't expect him to take some sort of secondary role, only look at one piece of the case and not the whole case. He's going to have to look at the whole case, he's going to have to be here for the whole trial. Even if all he does is one witness or the closing, I don't know, he might do the whole thing. That will be obviously up to the defense team as to what he does. But I think a co-counsel remedies two issues. One, is it remedies the issues of the Public Defender's office having a conflict with cross-examining a former

client. It also, I think, completely remedies the issue of whether or not any information the Public Defender's Office had, which in this case there's no record it had any, but let's assume that it had some that it could have gleaned in the, you know, minutes it met with Mr. Jaar at FDC, I don't see how the defense could be hampered at all when you've got somebody coming in. It isn't somebody from a different firm, which is another thing that happened in some of the cases that counsel cites, right? When you're just trying to bring in your partner who sits down the hall, that's one thing. Mr. Howard obviously isn't at the Public Defender, so Mr. Howard will have the ability, of course, to present and make whatever arguments he thinks he has to make, and he will have no constraints whatsoever. Even assuming the Public Defender's Office had some constraints based on anything their former client told them, which I find on this record they couldn't because that's just not what was exchanged.

So that takes care of that, and it also takes care of my second concern which is in the evolving situation that any trial is in -- and look, the Government's already changed its posture here once or three times, I guess, because at first we had the Palacios disqualification, then we had the first posture in the Garcia hearing, then we had the one in the supplement, now I hear something else today. I don't know, it doesn't strike me as there's more to come, but I never know if there's more to come. And so if there's more to come, and whatever more is to come does create some conflict with the Public Defender's Office and we're, you know, three months before trial or two months before trial, I'm not going to be looking at a continuance at that point because somebody now needs to come in and get

up to speed because Mr. Howard is expected to be up to speed and to be able to take on the full representation if that were required.

And so that brings me to then why leave the Public Defender's Office there to begin with. I leave them there to begin with because I don't think I have a record, a sufficient record, to disqualify them, and I know the Court or the Government is very concerned about a potential appellate posture, to the extent I am too, that's a potential appellate posture too.

And so Mr. Ortiz has represented, and I'm going to go ahead and I'll go through that colloquy now, that he wants the Public Defender's Office to represent him, that he understands that they represented Mr. Jaar briefly, that he has no issue with that waiver. I think if we have that on the record, they get to stay in the case and Mr. Howard is on the case for the potential of either -- well, for both resolving any potential or any actual conflict as well as any future conflict, I think that that alleviates the Court's concern which is to make sure that whatever trial there is of the matter, assuming that there is a trial, is litigated in a way that quite frankly is worthy of the 12, 14, 16 people, however many people are empanelled for this jury, it's worthy of their time and their commitment to our community. So that's what I want to make sure that we get right. And so I'm not so concerned about how much the case costs, I'm not so concerned about what arguments Mr. Ortiz could or could not raise without a legal basis to do so later, I'm concerned with the record in front of me. And the record in front of me, I don't believe there's a sufficient record to disqualify Mr. Ortiz's counsel of choice which in this case happens to be

the Public Defender's Office, and I don't think appointing a co-counsel at all creates any unnecessary issues. And again, I think it resolves both the actual conflict of having the Public Defender's Office cross-examine a former client, and could potentially resolve any other conflicts should anything else arise.

Mr. Caruso and Ms. Holt, are we prepared to ask -- swear your client in and ask him the Garcia colloquy?

MR. CARUSO: Yes, Your Honor.

MS. CASTRO: Your Honor, if I just may ask a procedural question. I know we had discussed at the later proceeding Your Honor was going to, or I believe was contemplating appointing Garcia counsel for the purposes of also having that on the record as someone who had counseled Mr. Ortiz about the potential waiver. I just wanted to inquire as to whether or not we'll still be taking that approach here.

THE COURT: I'm not. I'm not going to take that approach because Mr. Howard is going to come in. You know, at this point Mr. Ortiz has been now to four hearings where this has been discussed, or five because there were two in front of Judge Louis, right? The first one was his initial appearance where he already had that colloquy. He's had the first hearing, the second hearing, the third hearing, I don't think it's necessary. I'm certainly going to inquire of him if he wants that, and if he wants it I'd be happy to appoint yet somebody else to describe it to him. But unless he explains to me or has any reservations about what's going on, I don't intend to do that.

Mr. Caruso? Ms. Holt?

MR. CARUSO: Yes, Your Honor, did you want --
THE COURT: Are we ready?
MR. CARUSO: Yes, we're ready.
THE COURT: Okay. Donna, go ahead and swear him in.
MR. CARUSO: ...stand up, Your Honor?
COURTROOM DEPUTY: Please raise your right hand. It's not necessary. Do you swear or affirm that the testimony you're about to give before the Court will be the truth, the whole truth and nothing but the truth, so help you God?
THE DEFENDANT: (Through Spanish Interpreter) I do.
COURTROOM DEPUTY: Okay. Thank you.
THE COURT: All right. Good afternoon, sir. You may be seated. Can you state your full name for the record?
THE DEFENDANT: Arcangel Pretel Ortiz.
THE COURT: How old are you sir?
THE DEFENDANT: (Inaudible) years old.
THE COURT: How far did you go in school?
THE DEFENDANT: I finished high school and I have a technical degree from college.
THE COURT: The reason I need to ask you these questions, sir, is I want to make sure that you're competent to proceed. There's nothing in this record to suggest that you're not mentally competent to proceed, but I am going to be asking you whether or not you're prepared to waive potentially a right, and so I want to make sure that you're competent to proceed. Have you ever been treated, sir, for any kind of addiction

or mental health issue?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you currently being seen by a psychiatrist or psychologist?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you take any medications, sir?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you taken any medication in the last 48 hours?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you feel that you might have a mental health issue or a physical issue that would make it difficult for you to understand the proceedings?

THE DEFENDANT: No, Your Honor.

THE COURT: Ms. Holt or Mr. Caruso, do you have any concerns with respect to his competency?

MR. CARUSO: No, Your Honor.

THE COURT: Does the United States have any concerns with respect to his competency?

MS. CASTRO: No, Your Honor.

THE COURT: All right. So I'm going to find, sir, that you're competent to proceed.

So sir, like I mentioned, this is the third time that we're here and we've had a number of hearings in this matter because as you well know, the Public Defender's Office, not Ms. Holt or Mr. Caruso or anybody who is going to represent you at this point, it's Mr. Padilla who is no longer with

their office, Mr. Padilla is a public defender who was appointed to represent Mr. Jaar, and he saw him in court obviously the day he was appointed, the way you saw your lawyers the day you were appointed, and he had one meeting with him in the federal detention facility. The representation that has been made and hasn't been challenged is that it was a meeting that lasted less than an hour. Again, we've talked about it, I want to make sure that you understand that that happened.

Do you understand that Mr. Padilla represented Mr. Jaar for that length of time?

THE DEFENDANT: Yes, perfectly well.

THE COURT: And you understand that when he represented him, of course he was his lawyer and that Mr. Jaar obviously was free to discuss anything he wanted with his lawyer because that was his lawyer for that time frame. Are you aware of that?

THE DEFENDANT: Yes, I understand.

THE COURT: Now, the law says that even though Mr. Padilla's, I don't believe, ever spoken to you, that whatever Mr. Padilla had in his head literally is something that Ms. Holt and Mr. Caruso now have in their heads. Even though they haven't talked about anything, the law just presumes that because they're all part of this office, even though they may have never talked about the issue, we just presume that anything Mr. Padilla knows Ms. Holt and Mr. Caruso know.

Do you understand that?

THE DEFENDANT: Yes, I understand that.

THE COURT: And so because that is the law, Mr. Caruso or Ms.

Holt or anybody else from the Public Defender's Office who should come in to assist you in this case and represent you, the law tells us that that puts -- that could put them in a position where they can't represent you as they should because maybe they're being held back by their prior representation of Mr. Jaar. Do you understand that concept, sir?

THE DEFENDANT: Yes, I understand it.

THE COURT: Do you have any questions about it for me? Do you want to speak to another lawyer, an independent lawyer, not -- obviously not the Court, but certainly not the Public Defender's Office, is there someone that you feel that you have questions that you need to ask? And if you do, I'll appoint a lawyer to come and see you at FDC and answer any of your questions. Do you have any questions about that, sir?

THE DEFENDANT: No. No, Your Honor.

THE COURT: Now, the other issue that presents itself is that you could decide to go to trial in this case, and by the way, I don't know that you will, right? But let's say you go to trial and let's say at that trial the Government calls Mr. Jaar to testify. Again, some of these things will happen as they happen, right? Right now that appears to be the intention, so we're going to assume that that's what's going to happen and that Mr. Jaar will testify and that he will say things that are incriminating, right? He will say things that are bad for you. Because Mr. Padilla had previously represented him, the law tells us that Mr. Caruso and Ms. Holt shouldn't be cross-examining their former client.

Do you understand that concept, sir?

THE DEFENDANT: Yes, I understand it.

THE COURT: Now, what I've decided to do, but this is very much your decision, is to appoint another lawyer that has nothing to do with the Public Defender's Office. His name is David Howard, I'm sure he'll go to FDC promptly to visit with you. So you're going to have two lawyers. You're going to have the Public Defender's Office and you're going to have Mr. Howard, and they're both going to work with you to represent you, and Mr. Howard will be there for all the same purposes that the Public Defender's Office will be there. So that if you have a trial in this case and if Mr. Jaar testifies against you, it's Mr. Howard that will be doing that cross-examination. It's not going to be Ms. Holt and it won't be Mr. Caruso, it won't be anybody from their office, that will be Mr. Howard. So you may have preferred that Ms. Holt do the cross-examination or Mr. Caruso, but it will be Mr. Howard that does that cross-examination of Mr. Jaar.

Do you understand that?

THE DEFENDANT: Yes, I understand that.

THE COURT: And you understand that that will happen so that the person that cross-examines Mr. Jaar doesn't have any kind of conflict, real or imposed, because that person should cross-examine Mr. Jaar fully and without any kind of limitation because that's what you're entitled to. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: And so you understand that going forward if you were to go to trial or if you were convicted, your ability to come back and say hey, the Public Defender's Office had a conflict, that's what you will have waived today because you're saying to the extent they have a conflict, I

waive it understanding, of course, that you're also going to have a co-counsel in this case.

Do you understand that concept that I've explained to you, that to the extent there's a conflict, you will have waived it, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that something you've already discussed with your lawyers, what that means and whether or not you're comfortable doing that?

THE DEFENDANT: I haven't had the time yet to do it with both of them.

THE COURT: All right.

THE DEFENDANT: Could you give me a second so I can talk to them?

THE COURT: Sure. Like I said, I know we've been here before, this issue with Mr. Howard is new, and I know you haven't talked to them about that. So I'm going to give you a minute, I'll give you 10, I'll reset the hearing if I have to if you need more time to talk to your lawyers about your waiver, sir. You can go ahead.

MS. HOLT: Just a few minutes. Could we grab Madame Interpreter? Thank you, Your Honor.

(Pause)

MR. CARUSO: Thank you, Your Honor.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: All right. So I had mentioned to you, sir, I wanted to make sure that you had spoken to Ms. Holt or to Mr. Caruso about this waiver issue. Have you spoken to them about the waiver issue before today's hearing, sir?

THE DEFENDANT: No, just now I did. Oh sorry, in the previous hearing.

THE COURT: Look, it doesn't matter, I just want to make sure that you've had enough time. Do you have any more questions about this issue of waiver that you want to address with these lawyers or with another lawyer or with the Court?

THE DEFENDANT: No, Your Honor. Everything is clear.

THE COURT: Mr. Caruso or Ms. Holt, is there any other question that I should ask of your client with respect to the waiver issue?

MR. CARUSO: No, Your Honor. Thank you.

THE COURT: Does the Government submit there's anything further that should be asked with respect to the waiver?

MS. CASTRO: No, Your Honor.

THE COURT: Okay. All right, sir.

So I want to make sure that we're clear, you understand that as a result of today's hearing, if you so decide, you'll be waiving any potential further argument that you have that the Public Defender's Office has a conflict and should not represent you. Do you understand that?

THE DEFENDANT: Yes, I understand that.

THE COURT: And do you agree to waive any potential conflict they may have?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you wish for the Public Defender's Office to continue to represent you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. All right. I typically make these findings by order, so a Garcia order will be entered. The appointment of counsel is also done by order, and so that's as effective as of, I don't know, 20 minutes ago when I appointed Mr. Howard. Of course the Government is always free to appeal the Court's decision. I'll probably get around to a full written order at some point, but you're more than welcome to order the transcript and you can appeal my decision to have Mr. Howard appointed as co-counsel and not to disqualify the Public Defender's Office in keeping with what the rules require and the time frame the Court expects.

Do you need me, Donna? Okay. Give me a minute. Hold on.

All right. Just because it's going to be one of those cases, Donna didn't hit the record during the first ten minutes. I think that's fine because that's -- it was mostly me complaining to the Government about their last-minute change, so Government you'll get a break today. That's not going to be part of the record. I guess it is now, but in any event, there was nothing substantive with respect to the proffer or anything else. I mean, it was mostly you and I going at it, Ms. Castro. So is there anything that you want to add for the record?

MS. CASTRO: The Government is in no way intending to go at it with Your Honor.

THE COURT: I meant that in a very friendly way.

COURTROOM DEPUTY: My apologies.

MS. CASTRO: No, no, it's totally understood.

Just one point if we could just be clear for the record and memorialize Mr. Jaar's position as to his waiver or lack thereof? I just

want to make sure that we've gotten that on the record.

THE COURT: I appreciate that because that's also something that seems to be something that's changing, at least based on the last submission the Public Defender's Office made with respect to what Mr. Jaar's position was, so thank you.

Mr. Schwartz, what is Mr. Jaar's position?

MR. SCHWARTZ: Judge, my client is not waiving the conflict.

THE COURT: I don't believe that on this record he's got a conflict. Is it the Government's position that he has a conflict?

MS. CASTRO: Your Honor, it would go to the duty of loyalty. So he does have a conflict that would need to be waived due to the duty of loyalty that the Federal Defender -- and there were several cases, I think Cordoba and Miranda that I had cited in my briefing basically state that the ethical conduct rules require disqualification. I can't recall right now if they address --

THE COURT: I don't think that's what those cases say, but go on.

MS. CASTRO: Due to the -- again, the divided interest and the implications of that, we've already talked about and I won't belabor the point.

THE COURT: Right, but he's not going to trial. He pled guilty already, so I'm not sure how his waiver would be -- I don't think it's either here nor there. I suppose that if he wants to do something else, I don't know what he would do with respect to the trial.

MS. CASTRO: It's entirely an ethical question. It goes to the ability to the Federal Defender to effectively represent Ortiz without

attacking their former client's credibility, and that is where his waiver would be needed with respect to whether or not he's going to waive the duty of loyalty.

THE COURT: Right. So I don't believe it does go to that and that's why I've appointed co-counsel, right? Because to the extent that the Public Defender's Office would have -- would be restricted in any way, shape or form to representing Mr. Ortiz due to a duty of loyalty, that's why they have a co-counsel who would make sure that that would not happen and that Mr. Ortiz's rights would be safeguarded in that event. Those cases that you cited were not cases where a co-counsel was addressed in terms of resolving that.

MS. CASTRO: Your Honor, I'm not trying to change -- I know Your Honor has ruled, but I just want to make sure that I presented all of my points to Your Honor.

THE COURT: Go right ahead.

MS. CASTRO: Those cases in specific were Miranda and Kite and --

THE COURT: Kite was the case that it was the reconsideration, right?

MS. CASTRO: Just one moment. So I cited several for this proposition in my oral argument notes here, and I've got -- first one of those was Cordoba. And in Cordoba there was a former client that was going to cooperate against the current client and the court cited Rule 4-1.9. This is a Southern District of Florida case, these are Florida Bar rules. Again, referring to the duty of loyalty and that was in the face of assertions from the defense that there was a minimal representation there.

The court found that irrelevant and they specifically found that the hybrid proposition was an imperfect and ineffective approach in particular where the former client objected to that idea. So I just want to make sure, again, that I presented all my arguments before the Court.

THE COURT: Sure.

MS. CASTRO: -- the Cordoba case --

THE COURT: So Cordoba is the Matthewman case. Obviously a district court case is not -- I mean, I'm not bound by Judge Matthewman's opinion in Cordoba, and in Cordoba, and I think I went through this one, Cordoba was a case where Mr. Klugh had very significant representations of the former client. And so Judge Matthewman makes the decision that there the solution is imperfect which, by the way, not that anybody cares what I would have said if I had been presiding over Cordoba, I wasn't even a judge. But if I were presiding over Cordoba, I'd agree with him and I think I've said that multiple times on this record. If these were the facts, I think co-counsel would be imperfect given that scenario.

And, of course, Miranda is a '96 case, that's the Highsmith case. Again, it's a district court case where another district court judge makes the decision that co-counsel is imperfect. I could have made that decision here, of course, but I didn't based on the facts of this case.

MS. CASTRO: I understand, Your Honor. I just still wanted to clarify as to those cases.

THE COURT: I just want to make sure there wasn't an Eleventh Circuit case that said that the issue of co-counsel was imperfect or disfavored or anything of that nature, which I didn't find any that said

that.

MS. CASTRO: Your Honor, I don't believe that I have an Eleventh Circuit case that was analyzing that issue because I haven't found a case where that approach was adopted that is comparable to the facts here.

THE COURT: Right. That's the issue, the facts, right? We just have a different pattern here. Like I said, if these facts were the Cordoba facts, I think a co-counsel would not resolve the issue.

MS. CASTRO: Understood, Your Honor.

Your Honor, I understand that Your Honor is going to issue a report and recommendation if I'm understanding?

THE COURT: No. I'll issue an order.

MS. CASTRO: An order. Understood, Your Honor. The Government would just ask if the Court could stay that order so we have an opportunity to explore whether we would be engaging an appeal.

THE COURT: No. Why would I stay it? That doesn't make any sense. So I'm going to appoint Mr. Howard. If you -- I'm going to appoint him as of today. My decision is as of today. I'll probably memorialize it in a more detailed order, but you have, starting today, to appeal me to Judge Martinez. He'll have this transcript except for the last ten minutes, but I think you filled those in so we're good now, you can appeal that. There's nothing -- what would I be staying? I would be saying Mr. Howard coming in.

MS. CASTRO: No, Your Honor. It's just that at this point we would then begin to produce discovery to both federal defenders and to --

THE COURT: And why not? There's no issue with you doing that.

I don't see what issue is created. If any is created, it's some ethical issue for the Public Defender's Office which they're not concerned with because they haven't withdrawn from the case, and so I don't see why I would stay it. I'm trying to figure out here -- I mean, talking it through with you, why would I stay it? I mean, I understand a detention order or something like that, but I don't understand what I'd be staying.

MS. CASTRO: Your Honor, it's just we would then begin to engage with defense for Mr. Ortiz including the Federal Defender --

THE COURT: And Mr. Howard.

MS. CASTRO: -- going to be continuing on the case, and if that ends up being a different outcome in the event of an appeal, it might not be appropriate to begin taking that posture with them.

THE COURT: But I think I've said that they're going to be doing this with Mr. Howard, so you'll be communicating with Mr. Howard and the Public Defender's Office. And really the quote, unquote, worst case scenario is Judge Martinez disagrees with me and wants to disqualify the Public Defender's Office. I mean, unless he also wants to disagree with me about Mr. Howard, which I don't suspect he'll have a disagreement with that. In fact, I think that's why discovery needs to get going.

One other thing -- well, I'm sorry. Go ahead.

MS. CASTRO: No, no. Go ahead.

THE COURT: Yeah, so no, I'm not -- (unintelligible) stay I guess is my point.

MS. CASTRO: Understood. Your Honor, again, I just want to preserve our objection for the record and we'll proceed after we've had a

chance to confer regarding further appeal in front of Martinez.

THE COURT: Sure. The only other thing I'll mention is I did mention to the Government and of course to the Public Defender's Office in open court that I wouldn't be going to the next person on the CJA list. So let me make a notation about that, because I did not go to the next person on the CJA list. I specifically said that I would be trying to -- going to a larger firm in terms of handling the bandwidth. I clearly didn't do that since Mr. Howard is not a member of a larger firm. I looked at our CJA list, we actually don't have many practitioners who are both at a big firm and take on Category 4 cases. The Government noted this is a Category 3 case in its indictment package, I don't think it is, it's clearly a Category 4 case, so that dwindles the pool down considerably. Mr. Caruso is smiling because he also heads the CJA panel, he knows full well there's not a lot of people who fit the bill of both being at a firm that could handle this from a resource perspective and are at a large firm. A lot of those folks, as a service to the court, will sign up for a Category 1 or a Category 2, they don't sign up for Categories 3 or 4.

That being said, I have to make sure that it's somebody who can take on this representation because as I noted, it's not somebody who is coming in just to cross-examine somebody. If they're coming in in a significant capacity, a full capacity really in this kind of case, they've got to have time to do it. And that then dwindles your pool even further because there's not that many folks who, on any given day, can take on this representation just straight off the CJA list because they may be already appointed to other cases. And then, of course, I have to consider that it's

got to be a lawyer that has the kind of experience that's needed to take on this representation, and that's how I landed with Mr. Howard. Like I said, I didn't go to the next one down the list because we've been doing that and that's why I have, I think now, three motions for co-counsel. And so I don't think this is a case that requires 20 lawyers to appear, and so having a lawyer that's experienced and very experienced to take this on was important.

I'll also note for the record there's now a motion to appoint like a discovery counsel in the case. I'll let the Government know that after the following week, after Easter week, I will be having a sealed ex-parte hearing with all the defense lawyers. Obviously the Government is not invited to that because it is strictly to talk about CJA and the CJA appointments and the multiple requests I have now for investigators and the multiple requests I have for co-counsel, and we've got to get a handle of that so this case can get tried, right? Because as long as people have pending requests for co-counsel, I can't move this case along. And so we will be doing that, I'll have to issue a separate order so that folks will know to be here so that we can get some system. Again, totally ministerial. For obvious reasons the Government won't be invited to that one, but I'll be doing that.

So anything further on behalf of the United States?

MS. CASTRO: Nothing further. Thank you, Your Honor.

THE COURT: Anything further Mr. Caruso or Ms. Holt?

MR. CARUSO: Can we save Mr. Pretel a trip and arraign him today?

THE COURT: Yes.

MR. CARUSO: Yes. Your Honor, on behalf of Mr. Pretel, we acknowledge receipt of the indictment, we waive its formal reading, enter a plea of not guilty, ask for a jury trial and that the Government start producing discovery.

THE COURT: All right. For some reason I thought that he had already been arraigned by Judge Louis. It was just the detention hearing.

MR. CARUSO: I think because there was an issue regarding counsel, the Government asked that his arraignment be postponed until he had permanent counsel.

THE COURT: Which is why you don't have discovery.

All right. So I'll accept the waiver of the full reading of the indictment, I'll enter the plea of not guilty, I'll note the demand for a jury trial, the standing discovery as to Mr. Ortiz -- I apologize, I referred to him as Mr. Ortiz, not Mr. Pretel, will be filed today.

I see the Defendant is making like a hand gesture to me so --

THE DEFENDANT: Pretel Ortiz.

THE COURT: Pretel Ortiz. Okay. It's a compound name?

THE DEFENDANT: Pretel Ortiz. Thank you.

THE COURT: Pretel Ortiz.

I don't know if the Brady admonition --

MR. CARUSO: That was given, I believe, Your Honor.

THE COURT: That was already given. Does the Government concede? Okay.

All right. Anything further then on behalf of Mr. Pretel Ortiz?

MR. CARUSO: No, Your Honor. Thank you very much.

THE COURT: Mr. Schwartz, anything further?

MR. SCHWARTZ: No, Judge. Thank you.

THE COURT: All right. Thank you very much. You all have a good afternoon.

COURTROOM DEPUTY: Hold on, Judge.

THE COURT: Oh, hold on? Everybody sit down.

All right. Donna has brought to my attention that I do typically have the written Garcia -- the written waiver is submitted. So is there any objection to the Defendant signing the written waiver and proceeding with that?

MS. CASTRO: I'm sorry, proceeding to what?

THE COURT: Does the Government have any objection?

MS. CASTRO: No, Your Honor.

MR. CARUSO: No, Your Honor.

THE COURT: You're prepared to do this?

MR. CARUSO: Yes.

THE COURT: I know, but I've got to ask him a few questions.

All right. Mr. Pretel Ortiz, you've already and I've already accepted your waiver for purposes of the record, it's an oral waiver. In addition to the oral waiver, the Court has a written waiver that is typically signed. Give me a minute, because this is a written waiver.

Actually, I'm actually not going to make you sign this because this contemplates a different situation. So I think the oral waiver is sufficient, and all the parties have so stated so now we're done. You all have a good afternoon.

MR. CARUSO: Thank you, Your Honor.

COURTROOM DEPUTY: All rise.

THE DEFENDANT: Good afternoon.

(PROCEEDINGS CONCLUDED)

* * * * *

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the digital audio recording of proceedings in the above-entitled matter.

4/9/2023 /s/ Dawn M. Savino, R.P.R., C.R.R.
Date DAWN M. SAVINO, R.P.R., C.R.R.