UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 22-20104-CR-BECERRA(s)(s)(s)(s)(s)

UNITED STATES OF AMERICA

vs.

ARCANGEL PRETEL ORTIZ, *et al.*,

    Defendants.
_____/

**<u>AFFIDAVIT REGARDING RULE 15 DEPOSITIONS OF COLOMBIAN NATIONALS</u>**

    Defendants Arcangel Pretel Ortiz ("Ortiz"), Antonio Intriago ("Intriago"), Walter Veintemilla ("Veintemilla"), James Solages ("Solages"), and Christian Sanon ("Sanon") (collectively, the "Defendants"), by and through undersigned counsel, respectfully submit this affidavit pursuant to the Court's Paperless Order dated May 8, 2025 (DE 1053), identifying the Colombian nationals they seek to depose under Rule 15 of the Federal Rules of Criminal Procedure, and state:

    1. Defendants respectfully request leave to depose all the Colombian nationals currently in custody in Haiti pursuant to Rule 15 of the Federal Rules of Criminal Procedure.

    2. Each of the Colombian nationals offers essential, non-duplicative testimony that is critical to the Defendants' ability to present a constitutionally adequate defense.[1] During the alleged conspiracy period, not all the Colombian nationals arrived in Haiti at the same time or by the same means of transportation. Some arrived by air, while others traveled by land, which already

---

[1] Defendants rely more fully on the legal arguments set forth in their Reply to the "United States' Response in Opposition to Renewed Sealed Joint Motion for Deposition Pursuant to Rule 15," filed before this Court on May 13, 2025 (DE 1060) and incorporate those arguments herein.

sets the stage for their differing experiences. Once in Haiti, they were divided into rotating groups with varying assignments. These assignments were not uniform, and not all individuals were stationed in the same locations at the same time. As a result, each Colombian national had access to different information, attended different meetings, and was exposed to different instructions, individuals, and events.

3. On the night of the assassination of Haitian President Jovenel Moïse, the Colombian nationals were split into separate vehicles, assigned different roles, and even stationed at different locations prior to the operation. Each had a distinct line of sight—literally and figuratively—into what occurred, what was expected of them, and who, if anyone, was directing actions on the ground. For example, some were in vehicles with members of the Haitian National Police, while others were not. Some were armed with firearms, while others were unarmed. While some entered the President's residence, others did not. Among those who did enter, some went to the second floor, while others stayed on the first floor. Of those who ascended to the second floor, some turned right, while others turned left. Only a few of the Colombian nationals saw the President's body, and those who did were positioned differently within the President's bedroom.

4. Critically, the Colombian nationals had differing interactions with the Defendants themselves—some worked more closely with one Defendant than another, some received instructions or explanations from different individuals, and others may have observed behavior or made statements that are directly relevant to the Defendants' state of mind, intent, or lack thereof.

5. Given the significant differences in roles, movements, experiences, interactions, and access to information—not only on the night of President Moïse's assassination but throughout the weeks and months leading up to it—each Colombian national offers testimony that is both unique and essential. Their individual accounts are critical to understanding what the

Defendants knew, what they intended, and how they acted during the relevant period. This case turns on context and intent, and each Colombian national provides a distinct piece of that larger picture.

6. Although the Defendants maintain that all Colombian nationals possess material and distinct testimony crucial to the defense, in the alternative, should the Court limit the number of depositions, the Defendants respectfully request permission to depose the following individuals, each of whom offers essential and unique testimony critical to the defense:

- Neiser Franco Castañeda
- Juan Carlos Yepes Clavijo
- Victor Albeiro Pineda Cardona
- Carlos Giovanni Guerrero Torres
- Jheyner Carmona Flores
- Edwin Blanquicet
- Manuel Antonio Grosso Guarín
- Gersain Mendivelso Jaimes
- Jhon Jairo Suarez Alegría

7. Defendants expressly reserve the right to amend or supplement this list of proposed deponents. Discovery is ongoing, and additional information may further clarify or expand the materiality of testimony from others similarly situated. Defendants should not be penalized for making reasonable and timely additions as further facts develop.

For all of the foregoing reasons, Defendants respectfully request that the Court permit the depositions of all Colombian nationals in custody, or, in the alternative, authorize the depositions of the limited subset named above.

Respectfully submitted,

| | |
|---|---|
| **David A. Howard, P.A.** | **do Campo & Thornton, P.A.** |
| The Ingraham Building | Chase Bank Building |
| 25 S.E. 2nd Avenue, Ste. 1100 | 150 S.E. 2nd Avenue, Ste. 602 |
| Miami, Florida 33131 | Miami, Florida 33131 |
| Telephone: (786) 360-6056 | Telephone: (305) 358-6600 |
| Facsimile: (305) 536-2170 | Facsimile: (305) 358-6601 |

By:    s/ *David A. Howard*  
      David A. Howard  
      Florida Bar No. 956589  
      david@davidhowardlaw.com

By:    s/ *Orlando do Campo*  
      Orlando do Campo  
      Florida Bar No. 0156582  
      od@dandtlaw.com

      s/ *Daniela Jaramillo*  
      Daniela Jaramillo  
      Florida Bar No. 1002266  
      dj@dandtlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                    s/ *Orlando do Campo*  
                                                    Orlando do Campo