UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
    *Plaintiff*,

v.

                        CASE NO.: 22-20104-CR-MARTINEZ/BECERRA

ANTONIO INTRIGIAGO, et al,
    *Defendants*.
_____/

## SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE DEFENDANT'S "CORRECTED MOTION TO DISMISS FIFTH SUPERSEDING INDICTMENT" [DE #790] BASED ON PRESIDENTIAL EXECUTIVE ORDER

COMES NOW, the Defendant, Antonio Intriago ("Mr. Intriago" or the "Accused") by and through counsel, and in supplement to the previously filed Defendant's "Corrected Motion to Dismiss Fifth Superseding Indictment" (the "Motion to Dismiss") and states as follows in support:

### BACKGROUND & SUMMARY OF THE ARGUMENT

1. In or about August 28, 2024, Mr. Intriago filed the Motion to Dismiss. The Motion to Dismiss has been fully litigated at this juncture but has not yet been granted by this Honorable Court.

2. In the Motion to Dismiss, Mr. Intriago argued that the Indictment must be dismissed, to the extent that it is based on his exportation of certain tactical vests from the United States to Haiti.

3. As previously noted, the tactical vests are capable of classification as "body armor" under the National Institute of Justice guidelines. Such classification indicates that the vests afford protection from "longer-barreled handguns" but are not designed to protect against "steel core armor piercing rifle ammunition" or "military use". Likewise, such vests are not particularly "advanced" or novel, as far as tactical vest protection is concerned.

1

4. Mr. Intriago has argued that various theories support dismissal of the Indictment accordingly. First, Mr. Intriago alleged that this Court is not *bound* by agency interpretations of the classification or exportation of the tactical vests in question, and that under the applicable statute, his conduct in exporting low-level, non-extraordinary body armor vests (which provides no protection from military grade weaponry) does not violate the statute. Second, and regardless, Mr. Intriago argued that the statutory scheme upon which Counts VII, VIII, and IX are based is unconstitutionally vague, because applying the complex structure of CFR provisions, NIJ Standards, and attempting to rationalize either does not put a person of ordinary intelligence on notice of what conduct is prohibited.

5. On or about May 9, 2025, President Donald Trump (the "President") issued an executive order "Fighting Overcriminalization in Federal Regulations". *See* PRESIDENTIAL ACTIONS, https://www.whitehouse.gov/presidential-actions/2025/05/fighting-overcriminalization-in-federal-regulations/ (last visited Aug. 11, 2025) (the "Order to Reduce Prosecution" or the "ORP").

6. The ORP, as indicated above, specifically directs the Department of Justice and the United States Attorney to refrain from criminal prosecution of (a) strict liability offenses (i.e., have no *mens rea*; which (b) are "regulatory" in nature; and (c) where the putative defendant may not have known his conduct was unlawful.

7. The ORP crystalizes the issue in the Motion to Dismiss, and while not self-executing provides various legal underpinnings which are pertinent to, and dispositive of, the pending motion.

## THE EXECUTIVE ORDER

8. The ORP has a stated purpose as follows:

2

> **The United States is drastically overregulated.** The Code of Federal Regulations contains over 48,000 sections, stretching over 175,000 pages — far more than any citizen can possibly read, let alone fully understand. Worse, many carry potential criminal penalties for violations. The situation has become so dire that no one -— likely including those charged with enforcing our criminal laws at the Department of Justice — knows how many separate criminal offenses are contained in the Code of Federal Regulations, with at least one source estimating hundreds of thousands of such crimes. Many of these regulatory crimes are "strict liability" offenses, meaning that citizens need not have a guilty mental state to be convicted of a crime. **This status quo is absurd and unjust**. It allows the executive branch to write the law, in addition to executing it. That situation can lend itself to abuse and weaponization by providing Government officials tools to target unwitting individuals. It privileges large corporations, which can afford to hire expensive legal teams to navigate complex regulatory schemes and fence out new market entrants, over average Americans. **The purpose of this order is to ease the regulatory burden on everyday Americans and ensure no American is transformed into a criminal for violating a regulation they have no reason to know exists**.

> *See* ORP, § 1 (emphasis added).

9. The provisions at issue in the Indictment fall squarely within the issues identified by the President in the ORP. In fact, the Government has commissioned an expert for the sole purpose of <u>telling the jury the law</u>, vis-à-vis the exportation requirement, and classification of tactical gear, including bullet proof vests, which are at issue in these proceedings.

10. The Government's intent to use expert witnesses to explain the law to the jury implicitly or even overtly recognizes that an ordinary lay person cannot ascertain the potential "criminality" of conduct related to the exportation of tactical gear. *See e.g., Am. Safety Indem. Co. v. Fairfield Shopping Ctr., LLC*, 2016 U.S. Dist. LEXIS 93108 (N.D. Ala. Jul. 18, 2016) ("[Expert] testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person."); *Coquina Invest. v. Rothstein*, 2011 U.S. Dist. LEXIS 120267 (S.D. Fla. Oct. 18, 2011) ("Expert testimony is admissible . . . if it concerns matters that are beyond the understanding of the average law person.").

11. The Order to Reduce Prosecution also sets forth several policy statements, that govern prosecution by the United States Attorney: (a) criminalizing "regulatory offenses" is <u>disfavored</u>; (b) such prosecutions (as limited) should "focus on matters where a putative defendant is alleged to have known his conduct was unlawful"; (c) regulatory offenses which lack a *mens rea* requirement are "generally disfavored"; (d) agencies promulgating regulations must "explicitly describe the conduct subject to criminal enforcement" as well as the "authorizing statute" and "the mens rea standard applicable". *See* ORP, § 2.

12. These propositions make clear that continued prosecution of Mr. Intriago (a) is in furtherance of a constitutionally *vague* statute; and/or (b) exceeds the authority of the Department of Justice, the United States Attorney, and the Assistant United States Attorney's acting on his or her behalf; and/or (c) violates Mr. Intriago's right to due process.

<u>MEMORANDUM OF LAW</u>

I. THE ORP SUPPORTS MR. INTRIAGO'S ARGUMENTS RELATED TO CONSTITUTIONAL VAGUENESS

As argued in the Motion to Dismiss: "A criminal statute is unconstitutionally vague when it fails to provide a person or ordinary intelligence fair warning or authorizes arbitrary and discriminatory enforcement." *See United States v. Atkinson*, 532 Fed. Appx. 873 (11th Cir. 2013). Stated differently, "[an] ordinary person with common sense should be able to comprehend and comply with a statute that is not unconstitutionally vague." *See Wacko's Too, Inc. v. Cty of Jacksonville*, 522 F. Supp. 3d 1132 (M.D. Fla. Mar. 1, 2021). The Order to Reduce Prosecution specifically recognizes these propositions and attempts to strengthen the force with which this Court should apply those longstanding principles.

The President, in the ORP, specifically states that the current regulatory regime in this county is "so dire" that even individuals employed by the Department of Justice likely cannot ascertain

4

how many "separate criminal offenses are contained in the Code of Federal Regulations". *See* ORP § 1. The ORP also expressly recognizes what Mr. Intriago has argued vis-à-vis the difficulty in parsing through *thousands* of pages of complex definitions and cross-referenced provisions in order to identify whether a particular tactical vest is actually subject to any regulation at all. In that regard, one provision which Mr. Intriago purportedly violated in this case directs the reader the "EAR", which then leads to another code provision. That provision directs the reader to review a 79 page list called the Commerce Control List (CCL), which then requires that the reader review the National Institute of Justice Standard – a document divided into fourteen subsections and eight appendices.

As emphasized above, the Government apparently recognizes the fact that ordinary people are not on notice of what the complex regulatory scheme at issue requires. In that respect, the Government seeks to call an expert witness who can parse through the hundreds of pages of definitions and complex terms and "inform" the jury what a lay person must already know: what the law requires. Looking at the relevant regulatory scheme applicable here, it is clear that the President's ORP directly encompasses the already well-establishes notion that a statute cannot be vague and survive constitutional scrutiny. The Order to Reduce Prosecution only solidifies what Mr. Intriago has already argued in his Motion to Dismiss – that the statutory scheme under which he has been prosecuted is unconstitutionally vague, and the Indictment must be dismissed, accordingly.

II. THE GOVERNMENT'S CONDUCT IS DIRECTLY CONTRARY TO THE DIRECTIVE OF THE ORP & VIOLATES DUE PROCESS

In addition, and regardless of the fact that the ORP strengthens Mr. Intriago's vagueness arguments, the ORP raises questions related to the exercise of the authority of the United States Attorney in this case, and whether the continued prosecution violates Mr. Intriago's due process

rights. It is without question that executive orders are "binding upon all departments, agencies, and offices of the executive branch of the Government." *See Trump v. United States*, 2022 U.S. App. LEXIS 26437 (11th Cir. Sept. 21, 2022). Furthermore, Courts consistently find that "[although] as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises direction as to whether or not there shall be a prosecution in a particular case." *See In re Wild*, 994 F. 3d 1244 (11th Cir. 2021).

As an officer of the executive branch, the United States Attorney is subject to the ORP and bound by it. *See e.g., Fuller v. Edward B. Stimpson Co.*, 971 F. Supp. 2d 1146 (S.D. Fla. 2013) (recognizing that government agents are subject to executive orders and bound by them); *Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023) (recognizing that the federal government is bound by executive orders). While executive orders are not generally "judicially enforceable in *private civil suits*"[1] this Court undoubtedly has the ability to prevent a due process violation and preclude the United States Attorney from seeking to enforce a regulatory scheme against Mr. Intriago in violation of the Order to Reduce Prosecution.

The Eleventh Circuit has recognized that "a due process violation may result when the government's enforcement techniques reach a certain level of outrage." *See United States v. Valencia Vergara*, 264 Fed. Appx. 832 (11th Cir. 2008). "Law enforcement techniques will be deemed unconstitutional only if they violate that fundamental fairness shocking to the universal sense of justice, mandated by the due process clause of the [Constitution]." *See United States v. Savage*, 701 F. 2d 867 (11th Cir. 1983). In considering the Government's prosecution of Mr. Intriago in this case, the ORP is simply one piece of the study.

---

[1] *See Horses of Cumberland Island v. Haaland*, 2024 U.S. Dist. LEXIS 240237 (N.D. Ga. Nov. 7, 2024).

Mr. Intriago has no criminal history and became involved in this case when a longtime friend informed him of plans to "revitalize" Haiti, and the need for protection in transitioning the Government to a new President. Mr. Intriago had no reason to disbelief his friend once he witnessed numerous F.B.I. Agents and other individuals who represented they worked for the Department of State, C.I.A., F.B.I., and D.E.A., and other representatives, and the Government has *admitted* that at least one meeting occurred prior to the exportation of the tactical gear at issue, where numerous *government agents* were present. Believing that the Government actually backed the "revitalization" mission, Mr. Intriago agreed to export a small amount of low level tactical vests, and a third party was responsible for the shipping logistics.

Mr. Intriago did not export his tactical gear in the ordinary course and had no reason to know the complex web of statutory, code, and NIJ provisions which apparently apply to this task. Ultimately, the then-President of Haiti was assassinated, on account of numerous individuals, by his own police force. Mr. Intriago was charged, after this occurred with numerous offenses, including various strict liability, unlawful exportation offenses. As noted above, the regulatory scheme under which Mr. Intriago has been charged is unconstitutional in that it is vague. However, in May of 2025, several months ago, the President issued a binding executive order which binds the United States Attorney and specifically directs a <u>reduction</u> in <u>prosecution</u> as to (a) strict liability; (b) regulatory offenses; (c) where it is not clear that the purported defendant <u>knew</u> that his conduct was unlawful.

This is <u>precisely</u> the type of scheme and factual scenario to which the ORP is directed. Although the prosecution of Mr. Intriago is largely shocking, even absent the ORP, the ORP tips the scales of injustice and brings the government's action in continuing to pursue charges against Mr. Intriago as outrageous and unjust. The President's order calls for *reductions* in prosecutions

like Mr. Intriago's, and the Government's persistence in refusing to dismiss the Indictment as to the exportation charges is a flagrant violation of the ORP. It is fundamentally unfair that Mr. Intriago should be prosecuted under the circumstances before this Court, and this Court is authorized to dismiss the exportation related charges on due process grounds, accordingly.

Dated this 11th day of August 2025.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document, with the Clerk of the Court using CM/EFC which sent e-mail notification of such filing to all CM/EFC participants in this case on this 11th day of August 2025.

                                                **EMMANUEL PEREZ & ASSOCIATES, P.A.**
                                                901 Ponce De Leon Boulevard, Suite 101
                                                Coral Gables, Florida 33134
                                                Tel: (305) 442-7443; Fax: (305) 441-9218
                                                Email: courtmail@lawperez.com

                                                /s/ Emmanuel Perez
                                                    Emmanuel Perez, Esquire
                                                    Fla. Bar No. 586552