UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CR-20104-BECERRA

UNITED STATES OF AMERICA

v.

JAMES SOLAGES, et. al.,

Defendant.
______________________/

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO PRECLUDE ADMISSION OF HAITIAN CHARGING DOCUMENT AND ANY REFERENCE TO SAME**

COMES NOW, the Defendants, James Solages, Arcangel Pretel Ortiz, Antonio Intriago, Walter Veintemilla, and Dr. Christian Sanon (collectively "the Accused"), by and through undersigned counsel, and files this Joint Response in Opposition to the United States' Motion in Limine to Preclude Admission of Haitian Charging Document [DE 1302], and any reference to it (the "Motion"), and state as follows.

I. INTRODUCTION

1. The Government seeks an extraordinary, blanket prohibition: not merely exclusion of a foreign charging recommendation as substantive proof, but an order barring any reference to the Haitian indictment/charging recommendations—both its existence and contents—even for the core impeachment purpose of exposing a Government witness's motive, bias, and self-interest.

2. That sweeping relief is inconsistent with the Sixth Amendment right of confrontation and the well-established principle that a defendant must be permitted meaningful cross-examination designed to reveal a witness's bias, motive, or incentive to testify favorably

for the Government. *See Davis v. Alaska*, 415 U.S. 308 (1974); *Delaware v. Van Arsdall,* 475 U.S. 673 (1986); *United States v. Abel*, 469 U.S. 45 (1984).

3. The fact that a key Government witness (including, as the Motion anticipates, Martine Moïse) was identified as an accused/suspect in Haiti is probative of motive and bias—particularly in a case where Haiti's investigation has been reopened, international cooperation has been contemplated, and the witness may reasonably believe that her testimony in this U.S. prosecution could help her position in Haiti (directly or indirectly) or influence how Haitian authorities treat her.

4. Defendants do not seek to introduce the Haitian charging document as proof of any person's guilt. They seek to use it for what the Confrontation Clause most centrally protects: showing bias and self-interest. Any legitimate Rule 403 concerns can be addressed through tailored limitations (redaction, limiting instruction, scope restrictions), not a categorical gag order.

II. GOVERNING LEGAL PRINCIPLES

5. Bias is never collateral. A party is entitled to explore facts that "tend to show" a witness's bias, motive, or interest in the outcome. *Abel,* 469 U.S. at 51–52.

6. The Sixth Amendment guarantees an opportunity for effective cross-examination, including questioning that exposes "possible biases, prejudices, or ulterior motives." *Van Arsdall*, 475 U.S. at 678–79; *Davis*, 415 U.S. at 316–17.

7. The Government's reliance on authority limiting impeachment with mere arrests/charges for general credibility (e.g., Rule 609 concerns) does not control where the defense purpose is bias, motive, and self-interest, not character for truthfulness. *Davis*, 415 U.S. at 316 (cross-exam permitted to show motive/bias even where the underlying matter is not

admissible as general impeachment).

8. Evidence is relevant if it tends to make a fact of consequence more or less probable. Fed. R. Evid. 401. Evidence showing a witness's bias meets that standard because credibility is always consequential. Where such evidence implicates the Sixth Amendment right of confrontation, courts must be especially cautious about overbroad limitations on cross-examination, as the exposure of a witness's motive or bias is a "proper and important function" of the constitutionally protected right of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678–80 (1986). Exclusion under Rule 403 is improper where probative bias evidence is curtailed absent a substantial showing of unfair prejudice. *United States v. Abel*, 469 U.S. 45, 51–52 (1984).

III. ARGUMENT

**A. The Haitian charging recommendation is admissible (at least for cross-examination) to show motive, bias, and self-interest, which is distinct from Rule 609 "general credibility" impeachment.**

9. The Motion wrongly collapses two different concepts: (a) impeachment by prior conviction/charges to suggest a witness is generally untruthful (Rule 609-type impeachment), and (b) impeachment to show bias/motive (Confrontation Clause impeachment).

10. Defendants seek the latter. If a witness has been accused or identified as a suspect in Haiti in connection with the same assassination at issue here, that fact supplies a powerful reason to shade testimony—by minimizing her own role, aligning her narrative with what she believes the U.S. and Haitian authorities want to hear, or placing blame on the defendants to deflect suspicion.

11. The Supreme Court has repeatedly held that a defendant must be allowed to explore a witness's vulnerabilities, incentives, and motivations—especially where those motivations could

lead the witness to testify in a manner favorable to the prosecution. *Davis*, 415 U.S. at 316–18; *Van Arsdall*, 475 U.S. at 678–79.

12. Importantly, a witness's motive does not require a formal "deal," promise, or enforceable agreement. It is enough that the witness may hope, expect, or believe that cooperation/testimony will help. That subjective incentive is exactly what cross-examination is designed to expose. *See Davis*, 415 U.S. at 317–18 (right to expose motivation in testifying); Van Arsdall, 475 U.S. at 679 (jury must have sufficient information to assess bias).

**B. The "separate sovereign" argument does not justify a blanket prohibition; a witness can rationally believe her U.S. testimony may help her in Haiti.**

13. The Government argues that because Haiti is a separate sovereign, the U.S. prosecution team cannot provide leniency in Haiti and therefore Haitian charges cannot create bias. That is too narrow and unrealistic.

14. A witness's bias often arises from perceptions, not legal certainties. A witness may reasonably believe that the United States can share information with Haitian authorities; U.S. prosecutors can facilitate or impede "international cooperation"; Haitian authorities may view the witness more favorably if she is helpful to the U.S. prosecution; successful alignment with the U.S. narrative may reduce Haitian interest in pursuing her; or testimony may influence public, diplomatic, or investigative dynamics in a way that benefits her.

15. The Motion itself acknowledges the reopened Haitian investigation, the possibility of a new charging report, and the prospect of international cooperation. Those facts make the witness's incentive to curry favor more—not less—plausible.

16. In short, even if the U.S. cannot order Haiti to dismiss charges, a witness may still have a strong motive to testify in a way she believes will help her with Haitian authorities. The jury is entitled to know about that motive when assessing credibility.

**C. The Haitian document (or the fact of the Haitian accusation) is not hearsay when offered to show bias/motive, and extrinsic evidence is permitted to prove bias.**

17. If Defendants offer the Haitian charging recommendation (or selected, redacted portions) not for the truth of any accusation but to show the witness had reason to fear prosecution and thus had a motive to testify in a particular manner, the evidence is not hearsay. Fed. R. Evid. 801(c).

18. Moreover, unlike Rule 608(b), which limits extrinsic evidence of specific conduct to prove character for truthfulness, extrinsic evidence may be admitted to prove bias. *Abel*, 469 U.S. at 51–52 (bias impeachment; extrinsic evidence permissible).

19. At a minimum, the Court should permit cross-examination about the existence of Haitian accusations and the witness's knowledge of them. Whether the document itself is admitted can be addressed with a limiting instruction and appropriate redactions.

**D. Rule 403 does not support categorical exclusion; any legitimate risks can be cured with targeted safeguards.**

20. The Government asserts that any reference would confuse the jury, mislead them, and unfairly prejudice the witness. That is an argument for reasonable limits, not a ban.

21. Courts routinely manage bias impeachment involving other proceedings (including arrests, investigations, and allegations) by imposing guardrails, such as: permitting questioning limited to bias/motive (not substantive guilt); prohibiting "mini-trials" about the foreign proceeding; requiring counsel to avoid inflammatory language; allowing only the fact of accusation/suspect status (and the witness's awareness of it); admitting only heavily redacted excerpts showing the witness is named/accused; and, giving a limiting instruction that the foreign document is not evidence of guilt and may be considered only for bias/motive/credibility.

22. Those measures eliminate the asserted unfair prejudice while preserving Defendants' confrontation rights. A blanket prohibition, by contrast, deprives the jury of essential context bearing on a central Government witness's credibility.

**E. The Government's Fifth Amendment/"silence" concern is a red herring and can be fully addressed.**

23. The Government suggests that the Haitian materials may reference the witness's refusal to be interviewed and that such content could invite improper inferences.

24. Defendants do not seek to argue that a witness is guilty because she invoked silence or declined interviews, nor do Defendants seek to import any Haitian adverse-inference rule.

25. If needed, the Court can order redaction of any reference to refusal to appear or silence, and instruct the jury that it may draw no adverse inference from silence. Those tailored solutions fully address *Griffin* concerns without suppressing bias impeachment altogether.

**F. Precluding any mention also impairs Defendants' right to present a complete defense and to test the Government's narrative.**

26. The Government represents that Defendants may cross-examine about "purported involvement" without referencing the Haitian charging document. That is illusory.

27. In practice, preventing any mention that Haitian authorities themselves identified the witness as an accused/suspect strips the defense of a concrete, non-speculative basis for motive and bias and leaves only insinuation—precisely the kind of cross-examination juries discount as "argument."

28. The fact of accusation in a parallel investigation concerning the same assassination provides a legitimate foundation for bias impeachment and supports the defense's ability to test the credibility of a witness whose testimony the Government will ask the jury to rely upon.

## IV. PROPOSED LIMITING FRAMEWORK (IN LIEU OF A BLANKET BAN)

29. If the Court has concerns about scope or confusion, Defendants propose the following measured ruling. This includes (1): the permitting of cross-examination of any Government witness who was named/accused/suspected in Haitian proceedings regarding: the witness's knowledge of being accused or identified as a suspect; the witness's understanding of the status of the Haitian investigation; any belief, hope, or expectation that cooperation/testimony in the U.S. case could benefit the witness in Haiti; and any communications with anyone (including counsel, intermediaries, officials, or investigators) about whether U.S. proceedings may affect Haiti's case; (2) Permit admission of a redacted excerpt of the Haitian charging recommendation solely to show that the witness was named/accused, only if the witness denies knowledge or minimizes the issue, and only with an immediate limiting instruction; and (3) Preclude argument that the Haitian charging recommendation proves anyone's guilt; preclude references to any adverse inference from silence; and preclude extended litigation of Haitian legal standards (no mini-trial).

30. This approach protects fairness, prevents confusion, and respects constitutional confrontation.

CONCLUSION

WHEREFORE, all Defendants respectfully request that the Court DENY the Government's Motion in Limine to the extent it seeks a blanket prohibition on any reference to Haitian charging documents and/or the fact that a Government witness was named as an accused/suspect in Haiti, and instead enter a tailored order permitting cross-examination and, where appropriate, limited/redacted use solely for bias, motive, and credibility, together with an appropriate limiting instruction.

Respectfully submitted,

**JONATHAN S. FRIEDMAN, P.A.**
Jonathan S. Friedman, Esq.
101 N.E. 3rd Avenue, Suite 1500
Fort Lauderdale, Florida 33301
Tel: (954) 713-2820
Facsimile: (754) 301-5109
Florida Bar No. 973297
JFriedmanlawfirm@gmail.com

By: /s/ Jonathan Friedman

*Counsel for Defendant Solages*

**PATRICK DRAY, P.A.**
Patrick Dray, Esq.
11900 Biscayne Blvd, Suite 459
North Miami, Florida 33181
Tel: (954) 374-4323
Facsimile: (786) 513-2244
Florida Bar No. 180157
Pat@patdray.com

By: /s/ Patrick Dray

*Counsel for Defendant Solages*

**KUDMAN TRACHTEN ALOE POSNER, LLP**

Tama Beth Kudman, Esq.
7108 Fairway Drive, Suite 130
Palm Beach Gardens, Florida 33418
Tel: (561) 472-0811;
Facsimile: (561) 828-0210
Florida Bar No. 637432
tkudman@kudmanlaw.com

By: /s/ Tama Kudman

*Counsel for Defendant Veintemilla*

**DESCALZO LAW, P.A.**

Marissel Descalzo, Esq
150 S.E. 2nd Avenue
Suite 600
Miami, Florida 33131
Telephone: (305) 537-9565
Facsimile: (305) 537-9567
Florida Bar No. 669318
md@descalzolaw.com

By: /s/ Marissel Descalzo

*Counsel for Defendant Veintemilla*

**EMMANUEL PEREZ & ASSOCIATES, P.A.**

Emmanuel Perez, Esq.
901 Ponce De Leon Blvd., Suite 101
Coral Gables, Florida 33134
Tel: (305) 442-7443
Fax: (305) 441-9218
Email: courtmail@lawperez.com
Florida Bar No. 586552

By: /s/ Emmanuel Perez
*Counsel for Defendant Intriago*

**BARZEE FLORES, P.A.**

Hector L. Flores, Esq.
Couthouse Center, Penthouse 1
40 NW Third Street
Miami, FL 33128
Tel: (305) 374-3998
Fax: (305) 379-6668
hectorflores@barzeeflores.com
Florida Bar No. 633755

By: Hector L. Flores
*Counsel for Defendant Intriago*

**David A. Howard, P.A.**

David A. Howard, Esq.
The Ingraham Building
25 S.E. 2nd Avenue, Ste. 1100
Miami, Florida 33131
Telephone: (786) 360-6056
Facsimile: (305) 536-2170
Florida Bar No. 956589
david@davidhowardlaw.com

By: /s/ *David A. Howard*

*Counsel for Ortiz*

**do Campo & Thornton, P.A.**

Orlando do Compo, Esq.
Chase Bank Building
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601
od@dandtlaw.com

By: /s/ *Orlando do Campo*
Florida Bar No. 0156582

By: /s/ *Daniela Jaramillo*
Florida Bar No. 1002266

*Counsel for Ortiz*

**BOZANIC LAW, P.A.**
101 NE 3rd Ave Ste 1500
Fort Lauderdale, FL 33301-1181
Telephone: (954) 920-9750
Facsimile: (954) 400-0335
Florida Bar No. 23707
info@bozaniclaw.com

By: /s/ Zeljko Bozanic

*Counsel for Christian Sanon*

**HUMBERTO R. DOMINGUES, P.A.**

Humberto R. Dominguez, Esq.
9100 S. Dadeland Blvd., Ste. 1500
Miami, FL 33156
Tel: (305) 373-6400
bert@hdominguezlaw.com
Florida Bar No. 837903

By: /s/ Humberto R. Dominguez

*Counsel for Christian Sanon*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 12, 2026, the undersigned attorney electronically filed the foregoing document with the Clerk of the Court, United States Attorney's Office, and other counsel of record, if any, using CM/ECF and has served same via U.S. Mail to those counsel(s) or individuals, if any, who are not authorized to receive electronically Notice of Electronic Filing.

JONATHAN S. FRIEDMAN, P.A.
Attorney for Defendant
101 N.E. 3rd Ave.
Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 713-2820
Facsimile: (754) 301-5109
JFriedmanlawfirm@gmail.com

/s/ Jonathan Friedman
_____________________________.
JONATHAN S. FRIEDMAN, ESQ.
Florida Bar Number: 0973297