UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cr-20104-BECERRA

UNITED STATES OF AMERICA

v.

JAMES SOLAGES,

    Defendant.

_____/

### DEFENDANT JAMES SOLAGES'S OPPOSITION TO THE UNITED STATES'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS' PUBLIC AUTHORITY AND ENTRAPMENT-BY-ESTOPPEL DEFENSES

    Defendant James Solages respectfully opposes the government's motion to preclude a public authority or entrapment-by-estoppel defense (ECF 1315). In its motion, the government invokes only a single ground for precluding these defenses before the presentation of any evidence: that, in its view, Mr. Solages "failed to meet his obligations under Rule 12.3." *Id.* at 5. That contention defies the text of Rule 12.3, an "entirely procedural" rule that includes no "discussion of the substantive requirements for the defenses," *United States v. Pitt*, 193 F.3d 751, 757 (3d Cir. 1999), and forbids the remedy the government seeks here. And in any event, Mr. Solages's Rule 12.3 notice identifies facts and evidence that (although the Rule does not require it), would fully support a public authority or entrapment-by-estoppel defense if established at trial. If the government believes the trial evidence falls short, the appropriate remedy is to make those arguments at the charge conference—not to preclude defenses before Mr. Solages has had any opportunity for evidentiary presentation. At this stage, *at most*, the Court should defer consideration of the motion and permit Mr. Solages to make an ex parte offer of proof before ruling on the applicability of any defense.

**I.      RULE 12.3 DOES NOT AUTHORIZE PRECLUDING DISCLOSED DEFENSES BEFORE ANY EVIDENTIARY PRESENTATION**

As set forth at length in Mr. Solages's briefing on his Second Amended Rule 12.3 Notice, *see* ECF 877 (Sealed Reply in Support of Notice), and incorporated here by reference, nothing in Rule 12.3 requires a defendant to produce evidence before trial establishing a public authority defense or authorizes the exclusion of any defense for noncompliance. "Rule 12.3 is merely a notice provision." *United States v. Fulcher*, 250 F.3d 244, 254 n.5 (4th Cir. 2001). It is not a mechanism to test the merits of a noticed defense or to allow the government a one-sided preview of a defendant's trial evidence. Rule 12.3's text, its history, and precedent squarely foreclose the government's request to preclude disclosed defenses wholesale on the sole ground the government advances here: a purported failure long before trial to produce sufficient evidence in support of that defense. *See* Sealed Reply at 1–6. In its motion in limine, the government fails even to acknowledge—much less respond to—any of these arguments. Indeed, the government cites no case precluding a public authority defense wholesale based on a purported Rule 12.3 notice defect. *Cf. United States v. Canty*, 499 F.3d 729, 732–33 (7th Cir. 2007) (reaffirming the statutory language that the remedy for any Rule 12.3 compliance issue is exclusion of testimony of undisclosed witnesses).

*First*, Rule 12.3 does not require a defendant to disclose the evidence he intends to rely on to establish a public authority or entrapment-by-estoppel defense at trial. *See* Sealed Reply at 2–4. A Rule 12.3 notice "must contain" only three narrow, enumerated categories of information: "(A) the law enforcement agency or federal intelligence agency involved; (B) the agency member on whose behalf the defendant claims to have acted; and (C) the time during which the defendant claims to have acted with public authority." Fed. R. Crim. P. 12.3(a)(2). Consistent with the Rule's text, courts of appeals have consistently recited these enumerated elements as an

exhaustive list of the information a Rule 12.3 notice requires. *See, e.g.*, *United States v. Theunick*, 651 F.3d 578, 590 (6th Cir. 2011); *United States v. Giffen*, 473 F.3d 30, 34 n.3 (2d Cir. 2006). And the Rule's drafting history confirms that no further information need be included in the notice. An earlier draft of Rule 12.3 would have required that the notice "summarize the facts supporting the defense"—essentially what the government demands here. *Preliminary Draft of Proposed New Amend. to Fed. Rules of Crim. Proc.*, 111 F.R.D. 489, 497 (1986). But Congress rejected that proposal, instead adopting language requiring that a defendant's notice include only the name and agency of the officer involved and the time during which public authority is claimed. Courts have no authority to expand disclosure obligations in criminal cases beyond those which the Constitution, statutes, and federal rules impose. *See Palermo v. United States*, 360 U.S. 343, 348 (1959) (holding that court lacked authority to compel disclosures beyond those that an Act of Congress required); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("even a sensible and efficient use of the supervisory power … is invalid if it conflicts with constitutional or statutory provisions"); Wayne R. LaFave, 5 Crim. Proc. § 20.5, *Prosecution Discovery Provisions: Variations in Approach* (4th ed. 2017) ("In the area of prosecution discovery, in contrast to defense discovery, statutory provisions commonly are viewed as preemptive in purpose.").

Moreover, Rule 12.3's *reciprocal* discovery provisions leave no doubt that a Rule 12.3 notice need not identify even the identity of relevant defense witnesses, much less the substance of their anticipated testimony. *See* Sealed Reply at 5–6. After a defendant provides notice of the defense, the government may, at its option, "request in writing that the defendant disclose the name, address, and telephone number of each witness the defendant intends to rely on to establish a public-authority defense." Fed. R. Crim. P. 12.3(a)(4)(A). Doing so triggers reciprocal

discovery obligations for both the government and the defense: if the government invokes Rule 12.3's discovery provisions (it has not done so here), both the defendant *and the government* must disclose the witnesses they intend to rely on. These discovery provisions would be entirely superfluous if an initial Rule 12.3 notice needed to include, as the government contends, a detailed account of the witnesses and other evidence a defendant intends to offer supporting an asserted public authority defense.

Due process independently mandates that any such discovery obligation flow both ways. *See* Sealed Reply at 6–7. The Supreme Court has expressly held that requiring a defendant to disclose "the witnesses they intended to call in support" of a planned defense violates due process "unless reciprocal discovery rights are given to criminal defendants," *Wardius v. Oregon*, 412 U.S. 470, 471–72 (1973), and courts have upheld Rule 12.3 under that standard only because its discovery provisions—if invoked—apply equally to the government and the defense. *See United States v. Abcasis*, 785 F. Supp. 1113, 1118 (E.D.N.Y. 1992). Even under Rule 12.3's reciprocal discovery provisions, which the government has never invoked in this case, a defendant must disclose only the identity of witnesses, not describe testimony or make a pretrial evidentiary showing. Here, the government seeks to extract even more information about planned defense evidence, and by extension defense strategy, than that available under these provisions without incurring any reciprocal obligations. Both Rule 12.3 and due process foreclose that result.

*Second*, independent of the sufficiency of Mr. Solages's Rule 12.3 notice, the Rule forbids the remedy the government seeks: wholesale preclusion of a public authority or entrapment-by-estoppel defense. Rule 12.3 provides only one, narrow remedy: "If a party fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding

the public-authority defense." Fed. R. Crim. P. 12.3(c). That is, the Rule provides only for the exclusion of undisclosed witness testimony (by either the government *or* a defendant, *see United States v. Woodman*, 229 F.3d 1155 (6th Cir. 2000) (table)), and weighs heavily against the availability of more punitive remedies like the wholesale preclusion of a defense. Furthermore, the notion that the Court could preclude the defense on the basis of a purportedly insufficient notice is impossible to square with the fact that the "rule does not limit the defendant's right to testify"—as to a public authority defense or otherwise. Fed. R. Crim. P. 12.3(c). Indeed, at least one court of appeals has held that it was "erroneous" to preclude a defendant's testimony on a public authority defense even where defendant filed no Rule 12.3 notice *at all*. *Canty*, 499 F.3d at 732–33.

In sum, Rule 12.3 neither requires what the government says it does nor authorizes the remedy that it seeks. Tellingly, the government neither responds to these arguments—already briefed by Mr. Solages at length, *see* Sealed Reply at 2–7—nor cites a single legal authority in the argument section other than for a basic description of what a public authority defense entails. *See* ECF 1315, at 5–6. Because a purported "fail[ure] to meet his obligation under Rule 12.3" is the sole ground the government advances as a basis to preclude the defense, its motion should be denied in full.

## II.   MR. SOLAGES HAS IDENTIFIED FACTS SUPPORTING A PUBLIC AUTHORITY AND ENTRAPMENT-BY-ESTOPPEL DEFENSE

The government's motion should also be denied for the separate and independent reason that that Mr. Solages has already identified facts supporting a public authority and entrapment-by-estoppel defense. Even after trial presentation, the bar for providing a jury instruction on a public authority or entrapment-by-estoppel defense is low: "A defendant is entitled to have the court instruct the jury on the theory of the defense, as long as it has some

basis in the evidence and has legal support." *United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir. 1990) (reversing conviction where court failed to instruct jury on entrapment-by-estoppel defense). The facts contained in Mr. Solages's Rule 12.3 notice more than suffice to allow him to develop relevant evidence at trial.

Far exceeding the bare requirements of Rule 12.3, Mr. Solages's Second Amended Rule 12.3 Notice detailed specific statements by identified federal officers authorizing the conduct charged in this case. *See* Sealed Reply at 7–10. Those included oral statements made directly to Mr. Solages by an FBI agent, by a CIA agent, and by a DHS agent; a text message, included in full in the notice, from a CBP agent; and oral statements made by codefendants who Mr. Solages believed to be and actually were working on the FBI's or CIA's behalf. *See* Second Amended Notice of Intent to Rely on Public Authority Defense at 2–4. Among other statements, the notice states that a named CBP agent told defendants that "the U.S. has allowed [them], under the control of this Agency, to commit federal violations in order to bring criminals to justice." *Id.* at 2. And multiple individuals working on behalf of the federal government told Mr. Solages that he would have full immunity for anything that happened during the alleged operation to remove the Haitian President from the office he unlawfully occupied. *See id.* at 2–4. Reasonable jurors could conclude, on the basis of these facts alone (not to mention further evidence to be developed at trial), that Mr. Solages undertook charged conduct at the direction of federal agents with actual and apparent authority to authorize it.

The government's suggestion (at ECF 5–6) that these statements are insufficient because they did not identify violations of specific United States Code provisions as charged in the indictment is mistaken and would not support precluding defenses in any event. *See* Sealed Reply at 8. As the Department of Justice's Criminal Resource Manual acknowledges, a public

authority or entrapment by estoppel defense is available when a defendant's "*conduct* was sanctioned by the government." U.S. Department of Justice, Criminal Resource Manual § 2055 (emphasis added); *see also United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015) (defenses turn on "the official's approval of the *conduct* at issue" (emphasis added)). A reasonable juror could easily conclude based on the plain language of these statements and the context in which they were made that they communicated authorization to engage in the charged conduct. And Mr. Solages is entitled to develop further evidence in support of that eminently reasonable inference at trial. To the extent the government intimates that no federal official could lawfully have authorized defendants to "kill a president of a sovereign nation, or to kidnap President Moise to remove him from power," ECF 1315, at 6, it both ignores that Mr. Solages is charged principally with conspiracy offenses—not an unlawful killing or kidnapping—and that such conduct is plainly within the ambit of federal law-enforcement activity. *See* Department of War, *Trump Announces U.S. Military's Capture of Maduro*, https://www.war.gov/News/News-Stories/Article/Article/4370431/trump-announces-us-militarys-capture-of-maduro/ (describing removal of putative foreign president who had overstayed term of office in a "joint military and law enforcement operation").

Nor is there any conflict, as the government claims (ECF 1315, at 7), between Mr. Solages's assertions that he acted with actual or believed public authority and that he engaged only in lawful conduct. As the Court has recognized, promises of immunity by both Haitian and federal officials present difficult legal questions as to whether the charged conduct would amount to a crime. Evidence related to these issues might well establish that that Mr. Solages engaged in no criminal conduct; acted without requisite intent; *and* acted with public authority. These defenses are complementary, not contradictory. That the same or similar evidence also goes to

other defenses that the government has not challenged is only further reason to allow full presentation of the relevant evidence at trial.

### III. IF A FURTHER PRETRIAL SHOWING IS NEEDED, THE COURT SHOULD PERMIT MR. SOLAGES TO MAKE AN EX PARTE OFFER OF PROOF

Finally, if the Court determines (*contra* Rule 12.3) that a further pre-trial showing is required, the appropriate course is to permit Mr. Solages to make an ex parte offer of proof. To be clear, Mr. Solages opposes any requirement to make a further pretrial showing beyond what Rule 12.3 requires, and even if such a showing were necessary, the detailed account of statements by government agents in his Second Amended Rule 12.3 Notice should suffice. *See supra*. But due process and fundamental fairness mandate that, if the Court requires more, Mr. Solages should be allowed to do so ex parte.

"It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Wardius*, 412 U.S. at 476. And Mr. Solages cannot be compelled to provide evidence or witness statements to the government that it could use to attempt to convict him. *See, e.g.*, *United States v. Wright*, 489 F.2d 1181 (D.C. Cir. 1973). For that reason, in the context of an insanity defense under Rule 12.2, whose language and structure mirrors Rule 12.3, the Supreme Court has approved the use of ex parte proceedings to secure pretrial assistance of a psychiatrist. *Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985) ("When the defendant is able to make an ex parte threshold showing . . . that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent"). The opportunity for ex parte presentation is essential "to insure that the defendant will not have to make a premature disclosure of his case." *Marshall v. United States*, 423 F.2d 1315, 1318 (10th Cir. 1970); *see also United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir. 1973)

(permitting criminal defendant to proceed ex parte "to shield the theory of his defense from the prosecutor's [advance] scrutiny"); *United States v. Edwards*, 488 F.2d 1154, 1162 (5th Cir. 1974) ("Dissemination of information critical to the defense permits the government to enjoy unauthorized discovery which is forbidden under our concept of criminal procedure."). Rule 12.3's reciprocal discovery provisions also confirm that the Rules do not contemplate a one-sided pretrial presentation of evidence by the defense, to which the government may tailor its trial strategy.

Ultimately, whether the evidence establishes a public authority or entrapment-by-estoppel defense is a matter for the jury. And whether the evidence adduced at trial suffices to support an instruction on those defenses is appropriately decided after the presentation of trial evidence. The government has already received the notice it is entitled to under Rule 12.3; indeed, it has received significantly more than the Rule requires. The Court should deny its motion in full or, at most, permit Mr. Solages to make an appropriate offer of proof ex parte.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion.

Respectfully submitted,

JONATHAN S. FRIEDMAN, P.A.
Attorney for James Solages
101 N.E. 3rd Ave.
Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 713-2820
Facsimile: (754) 301-5109
JFriedmanlawfirm@gmail.com

/s/ *Jonathan Friedman*
_____.
JONATHAN S. FRIEDMAN, ESQ.
Florida Bar Number: 0973297


PATRICK DRAY, P.A.
Attorney for James Solages
11900 Biscayne Blvd.
Suite 459
North Miami, Florida 33181
Telephone:  (954) 374-4323
Facsimile:   (786) 513-2244
pat@patdray.com

/s/ *Patrick Dray*
_____
S. PATRICK DRAY, ESQ.
Florida Bar Number: 0180157

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on January 12, 2025, the undersigned attorney electronically filed the foregoing document with the Clerk of the Court, United States Attorney's Office, and other counsel of record, if any, using CM/ECF and has served same via U.S. Mail to those counsel(s) or individuals, if any, who are not authorized to receive electronically Notice of Electronic Filing.

              JONATHAN S. FRIEDMAN, P.A.
              Attorney for Defendant
              101 N.E. 3rd Ave.
              Suite 1500
              Fort Lauderdale, Florida 33301
              Telephone: (954) 713-2820
              Facsimile: (754) 301-5109
              JFriedmanlawfirm@gmail.com

              /s/ *Jonathan Friedman*
              _____.
              JONATHAN S. FRIEDMAN, ESQ.
              Florida Bar Number: 0973297