UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20104-BECERRA

UNITED STATES OF AMERICA

v.

ARCANGEL PRETEL ORTIZ, et al.,

    Defendants.
_____/

## UNITED STATES' EXPEDITED MOTION
## FOR DEPOSITION PURSUANT TO RULE 15

The United States seeks a Rule 15 deposition of former Haitian judge Jean Roger Noelcius, a Canadian resident who—the Government has just learned—is unable to travel to the United States for trial. Mr. Noelcius's testimony is material because, as part of the defendants' scheme to assassinate President Jovenel Moise, they attempted to justify their actions by invoking a supposed February 2019 arrest warrant for President Moise, signed by Judge Noelcius. In addition, defendant Arcangel Pretel Ortiz and others claimed that Judge Noelcius accompanied the squad of Colombian mercenaries (hired by these defendants) who killed President Moise. The Government expects that Mr. Noelcius will testify that: (1) the February 2019 arrest warrant was not a legitimate warrant; (2) in any event, private foreign citizens could never execute any Haitian arrest warrant; (3) the Haitian Constitution bars execution of arrest warrants between 6 p.m. and 6 a.m.; and (4) Mr. Noelcius was not present at President Moise's house or anywhere in Haiti on July 7, 2021, because he had moved to Canada in February 2021. Because trial begins on March 9, 2026, the Government respectfully requests an expedited briefing schedule, proposed below.[1]

---

[1] For purposes of Local Rule 88.9, the Government, on February 1, 2026, conferred via email with counsel for each of the Defendants to solicit the defense's position with respect to this motion.

**Background**

**A. Defendants' Offense Conduct and the Supposed Judge Noelcius Arrest Warrant**

The operative U.S. indictment charges defendants Arcangel Pretel Ortiz, Antonio Intriago, Walter Veintemilla, Christian Sanon, and James Solages with offenses arising from their months-long plot to depose, kidnap, or kill Haitian President Jovenel Moise, which culminated in President Moise's assassination on July 7, 2021 (DE 552). The Government has previously provided a detailed factual narrative of this scheme in its motion in limine to admit co-conspirator statements (DE 1301) (filed under seal). In sum, the defendants began plotting in early 2021 to overthrow President Jovenel Moise of Haiti and to replace him with their hand-picked successor, initially expected to be Sanon. *See* (DE 1301:1-12).

As part of that scheme, the defendants plotted different ways to "arrest" President Moise, under the guise of executing a supposed arrest warrant, dated February 18, 2019, and signed by Haitian Judge Jean Roger Noelcius. *See* (Ex. A) (Feb. 18, 2019, arrest warrant) (filed under seal). In actuality, the defendants did not plan to bring President Moise before any Haitian court. Instead, in one of the early iterations of their strategy in mid-June 2021, the defendants sought to kidnap President Moise at the airport, when he returned from an international trip, and to force him into exile on a different plane—a plan that they aborted in large part because the group did not have

---

Defendants Ortiz, Intriago, Veintemilla, and Sanon do not oppose the relief requested; because Defendant Solages has not responded, the Government assumes that he opposes the relief requested.

2

enough money to pay for the getaway jet. *See* (DE 1301:13-15) (describing communications between Ortiz, Intriago, Veintemilla, and Solages concerning the airport "arrest" operation).

In the wake of that failure, Solages vowed that, if they could get enough guns, Solages and 20-odd Colombian mercenaries—hired by Intriago, Veintemilla, and Ortiz, and assigned to protect Sanon during the coup attempt—would capture President Moise themselves (DE 1301:15). Under this new strategy, the Colombian mercenaries would breach Moise's home and seize him there in yet another fictitious "arrest" (*id.*).

To provide the Colombian mercenaries with a cover story, Intriago and Ortiz began collaborating with an Ecuadorian ally to draft a new, fictitious "arrest warrant" for Moise (DE 1301:15-16). That Ecuadorian ally, a lawyer, told the conspirators that he did not believe the February 2019 warrant to be valid or to provide the group enough cover (*id.*).

As time passed and the group grew more desperate, Veintemilla exerted more pressure on his co-conspirators to overthrow President Moise and to return to Veintemilla the substantial amounts of money that he had provided to support the coup (DE 1301:17-18). Spurred by Veintemilla's demands, Ortiz asked the leader of the Colombian mercenary company whether the group could execute the mission on June 28, 2021, even though they did not have enough weapons for every Colombian ex-soldier (DE 1301:18). The Colombians' leader refused to attack President Moise's home without enough guns (*id.*). Approximately a week later, on July 6, 2021, Veintemilla, Ortiz, and Intriago had a heated discussion in which Ortiz and Intriago pleaded with Veintemilla for more money and more time, and Veintemilla informed his co-conspirators that their funds were tapped out and that they needed to act quickly (*id.*).

In the face of this mounting pressure, Solages and other conspirators decided to attack in the early morning hours of July 7, 2021, as soon as they collected more guns. *See* (DE 1301:19-

20). And in their haste, they never completed the tentative plan to obtain a new arrest warrant. Around 2 a.m. on July 7, the Colombian mercenaries, accompanied by Solages and other conspirators, traveled to President Moise's house, where the former soldiers broke into the house in a pitched firefight, found President Moise hiding under his bed with his wife Martine at his side, and shot him dead in cold blood at point-blank range (DE 1301:20).

Soon, Haitian police forces began hunting down the killers. In desperate straits, Ortiz and Intriago spread the story—and encouraged the Colombian mercenaries to also begin claiming—that the Colombian mercenaries accompanied a judge (Judge Noelcius) to execute the supposed February 2019 warrant for President Moise's arrest. On July 7, 2021, text messages to one of his FBI handlers, Ortiz claimed that the Colombian mercenaries were merely contracted to provide security services to Sanon and a female judge. *See* (Ex. B, at 3) (excerpted Ortiz text messages) (filed under seal). According to Ortiz, the Colombians accompanied that judge to arrest President Moise. When asked by his handler for the judge's name, Ortiz responded Jean Roger Noelcius. *See* (Ex. B, at 26, 28). One dead giveaway (among many others) that Ortiz was lying about Mr. Noelcius's or any judge's involvement in these events is that Ortiz described Mr. Noelcius as a female judge, apparently because he assumed that "Jean" was exclusively a female name.

By that point, however, Mr. Noelcius no longer lived in Haiti. In fact, as explained further below, Mr. Noelcius had moved to Canada in February 2021.

**B. Former Judge Noelcius's Anticipated Material Testimony and Unavailability**

The Government disclosed that Mr. Noelcius would be a trial witness in its December 16, 2025, witness list. *See* (DE 1317:4). Based on documentary evidence and a March 2025 FBI

4

interview with Mr. Noelcius,[2] the Government anticipates that Mr. Noelcius will testify concerning several significant factual disputes.

First, in his role as an investigatory judge in Haiti, Mr. Noelcius signed the back-dated February 18, 2019, arrest warrant under unusual and irregular circumstances. The warrant was not the product of regular court procedures and, in fact, was hastily crafted in the weeks preceding the February 2021 Petit Bois coup attempt against President Moise as a way of pressuring him to resign or to leave office. Mr. Noelcius understood that he had no authority to issue an arrest warrant for the country's president.

Second, as an investigatory judge for over a decade, Mr. Noelcius will confirm that foreign private citizens have no authority, power, or license to execute a Haitian arrest warrant. In his experience as a judge, no foreign private force or group has executed one of his arrest warrants.

Third, Article 24-3 of the Haitian Constitution bars execution of arrest warrants between the hours of 6 p.m. and 6 a.m. This limitation is apparent in the plain text of the Haitian Constitution: "Except where the perpetrator of a crime is caught in the act, no arrest by warrant and no search may take place between six (6) p.m. and six (6) a.m."[3]

Fourth, contrary to claims made by Ortiz, Intriago, or other conspirators, Judge Noelcius did not accompany the Colombian mercenary group led by James Solages, which attacked President Moise's house and assassinated him on July 7, 2021. Judge Noelcius was not present at the house, nor did he travel with that group, to effectuate any arrest warrant, and he had not authorized, planned, or agreed with the defendants or their conspirators to execute any supposed

---

[2] The Government produced that interview report in discovery in May 2025. *See* USA000519120.

[3] https://pdba.georgetown.edu/Constitutions/Haiti/haiti1987.html; *see also* https://www.constituteproject.org/constitution/Haiti_2012.

5

"arrest" of President Moise. In fact, Judge Noelcius had moved from Haiti to Canada in February 2021, and was not even in Haiti on July 7, 2021.

On January 30, 2026, the Government spoke to Mr. Noelcius to discuss arranging his travel from Canada to the U.S. for his trial testimony. During that conversation and in subsequent follow-up exchanges, the Government learned for the first time that Mr. Noelcius would be unable to travel to the U.S. because he does not have valid travel documents and is awaiting the completion of his Canadian naturalization. At present, neither the Government nor Mr. Noelcius can predict the timing of that process, but it is highly doubtful that it will be complete in time for Mr. Noelcius to attend the trial.

## Legal Standard

Rule 15 authorizes a district court to order pre-trial depositions whenever, due to "exceptional circumstances," it is "in the interest of justice" that the testimony of a prospective witness of a party be taken and preserved for use at trial. Fed. R. Crim. P. 15(a)(1). The Rule requires that: (1) the witness is unavailable to testify at trial in the United States; (2) the witness would provide material testimony at the deposition; and (3) no significant countervailing factors would make the deposition unjust to the nonmoving party. *See United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993). Of those three criteria, "[t]he principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." *Id.* "When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony—by deposing the witness—absent significant countervailing factors which would render the taking of the deposition unjust." *Id.*

**Argument**

**The Court Should Grant a Virtual Rule 15 Deposition To Preserve Former Haitian Judge Jean Roger Noelcius's Highly Material Testimony.**

Under Rule 15, the Court should allow the Government to depose Mr. Noelcius. He cannot travel to the U.S. and, thus, is unavailable. His testimony is highly material because he will confirm that his supposed February 2019 arrest warrant for President Moise could not confer any authority or power on these defendants or their hired mercenaries to "arrest" President Moise. In addition, he will rebut false claims that he personally attended the assault on President Moise's house on July 7, 2021, which culminated in President Moise's assassination. Finally, no countervailing factors weigh against holding the deposition.

The Government recognizes that there is limited time before the impending March 9, 2026, start of trial. To make the deposition as convenient as possible for all parties, the Government proposes a one-day virtual deposition, similar to the format that the Government arranged for the defense-ordered depositions of Colombian nationals. *See* (DE 1243).

**A. Mr. Noelcius Is Unavailable.**

"A potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial." *Drogoul*, 1 F.3d at 1553; *see also* Fed. R. Evid. 804(a)(5) (a witness is unavailable if the person "is absent from the trial . . . and the statement's proponent has not been able, by process or other reasonable means, to procedure . . . the declarant's attendance"). The moving party need not prove unavailability through an affidavit or any specific means, and "that showing need not be conclusive before a deposition can be taken." *Drogoul*, 1 F.3d at 1553; *see also United States v. Baldwin*, 149 F.4th 959, 966-67 (7th Cir. 2025) (representations of counsel are a sufficient basis to find unavailability). And when

7

"witnesses are foreign nationals located outside the United States, they are beyond the subpoena power of the district court," and are generally unavailable. *Drogoul*, 1 F.3d at 1553.

In *United States v. Sidona*, for example, the Second Circuit affirmed a district court granting a government motion for Rule 15 depositions of four foreign witnesses, two of whom refused to come to trial and two who "had not yet obtained the necessary travel documents." 636 F.2d 792, 803 (2d Cir. 1980). Based on those facts, the *Sidona* Court agreed that the government had shown "exceptional circumstances." *Id.* at 804; *see also United States v. Vo*, 53 F. Supp. 3d 77, 81 (D.D.C. 2014) (granting Rule 15 deposition of a witness likely to be removed from the country before trial because, "even if she wanted to testify voluntarily, she likely would have trouble re-entering the United States to do so").

In this case, Mr. Noelcius is unable to travel to the United States because, just like the foreign witnesses in *Sidona*, he lacks the necessary travel documents. On January 30, 2026, the Government learned for the first time, when reaching out to Mr. Noelcius to coordinate his travel arrangements, about this issue. In short, Mr. Noelcius has applied for Canadian citizenship and is in the naturalization process. Until that process is complete, however, he cannot obtain a Canadian passport that would allow him to lawfully leave Canada, enter the United States, and then return to his new home country. And he cannot travel to the trial if he cannot be assured of his right to re-enter Canada. Thus, he is an unavailable witness. The Government cannot compel him to attend trial, and he cannot travel to the U.S. for trial under these circumstances.

### B. Mr. Noelcius's Testimony Is Highly Material.

Evidence that rebuts "a central defense theory at trial" is "highly material" and "critical to [a] case." *Drogoul*, 1 F.3d at 1553-54. In this case, Mr. Noelcius's testimony is essential to rebut both the contemporaneous claims of the defendants in June and July 2021, as well as to rebut a

8

potential defense theory at trial that the defendants either had—or acted out of a good-faith belief that they had—authorization to execute the Noelcius arrest warrant against President Moise.

Throughout June and July 2021, the defendants used the supposed arrest warrant signed by Judge Noelcius to justify numerous acts, including a failed operation to "arrest" President Moise at the airport, a later plan to "arrest" President Moise at his house, and the final strategy of attacking President Moise's house in the dead of night on July 7, 2021. The defendants' contemporaneous text messages exchanged images of that warrant both before and after the assassination. After killing President Moise, when the defendants' hired Colombian mercenaries ran into a police blockade and realized that they were in serious trouble (indeed, that they were in mortal peril), conspirators including Ortiz, Intriago, Sanon, and others frantically exchanged text messages about the Noelcius arrest warrant as they tried to justify their group's conduct. Ortiz told one of his FBI handlers—whom Ortiz had kept in the dark, and to whom Ortiz had lied about his purpose and plans in Haiti—that the Colombian ex-soldiers were trying to execute the Noelcius search warrant. *See* (Ex. B, at 3). Ortiz also insisted that Mr. Noelcius himself—whom Ortiz described to his handler as a "female judge," apparently because Ortiz misunderstood that the name "Jean" could also be masculine—accompanied the Colombian mercenaries to President Moise's house. *See* (Ex. B, at 3, 26, 28).

Mr. Noelcius's testimony thus "goes to the very heart of the government's allegations" and can "directly . . . refute" the defendants' contemporaneous claims, as well as their potential trial defense of authority to kidnap or kill President Moise. *Drogoul*, 1 F.3d at 1553-54. As noted above, Mr. Noelcius will testify that:

- He lacked the authority to issue a warrant to arrest President Moise, he signed the warrant in highly irregular circumstances, and he back-dated the warrant to make it appear almost

9

two years older;

- Colombian mercenaries and U.S. citizens, such as Solages and co-defendant Joseph Vincent, could never lawfully execute any Haitian arrest warrant;

- The Haitian Constitution bars execution of search warrants between 6 p.m. and 6 a.m.; and

- Mr. Noelcius did not accompany Solages and the Colombian mercenaries to President Moise's house on July 7, 2021, squarely contradicting the lies that Ortiz told in the immediate wake of the assassination to attempt to justify or deflect blame for the killing.

At its heart, a "fair trial" is one "designed to reach the truth." *United States v. Munoz*, 16 F.3d 1116, 1122 (11th Cir. 1994). And Mr. Noelcius's testimony is essential to presenting the truth about these events, particularly the defendants' false, contemporaneous justification for their actions.

**C. No Significant Countervailing Factors Weigh Against a Deposition.**

No significant factors weigh against a deposition, and four of the five defendants do not oppose this motion. The Government provided the defendants with a report reflecting Mr. Noelcius's March 2025 FBI interview in May 2025. *See* USA000519120. The Government also provided a witness list on December 16, 2025, which listed Mr. Noelcius as an anticipated trial witness (DE 1317:4). Deposing Mr. Noelcius in the time before trial does not prejudice the defendants in any significant way; if Mr. Noelcius were able to travel to trial, the defendants would hear his testimony and have a chance to cross-examine him during trial. They will have the same opportunity in the deposition.

Nor is this motion untimely. The Government learned the critical trigger for this motion, Mr. Noelcius's unavailability, on January 30, 2026 (after the parties' motions in limine hearing earlier that day), and has brought this issue before the Court at the earliest possible opportunity.

To ensure that there is no trial delay, and to minimize the burden on the parties, the Government proposes hosting a one-day, virtual deposition of Mr. Noelcius. Because Mr. Noelcius is located in Canada and willing to testify voluntarily by video, this deposition should be significantly easier to arrange than the defense-requested Rule 15 depositions of Colombian nationals in Haitian custody, which the Government was able to facilitate in November 2025. The Government also seeks to depose only one witness, a much lower burden than the defense-requested Rule 15 depositions, which involved five witnesses. The Government proposes a similar format and ground rules to those established by the Court's prior order concerning the Haitian virtual depositions. *See* (DE 1243).

## Conclusion

For these reasons, the Court should grant a one-day, virtual Rule 15 deposition of former Haitian Judge Jean Roger Noelcius, an unavailable witness with highly material testimony to offer.

The Government also respectfully requests that the Court expedite the briefing schedule on this motion to ensure that it can be decided with enough time to schedule and complete the deposition well in advance of trial. The Government proposes the following schedule:

- February 9, 2026, for the defendants to respond to the motion;
- February 10, 2026, for the Government to reply;
- Argument on the motion at the February 11, 2026, status conference.

Respectfully submitted,

JASON REDING QUIÑONES  
United States Attorney

JOHN A. EISENBERG  
Assistant Attorney General for the National Security Division

By: */s Sean T. McLaughlin*  
Sean T. McLaughlin  
Assistant United States Attorney  
Court ID No. A5501121  
11200 NW 20th Street, Suite 101  
Miami, FL 33172  
 (305) 715-7642/7654  
Sean.McLaughlin@usdoj.gov

*/s Andrew Briggs*  
Andrew Briggs  
Trial Attorney  
Court ID No. A5503251  
National Security Division – Department of Justice  
950 Pennsylvania Avenue  
Washington, DC 20530  
(202) 514-7739  
Andrew.Briggs2@usdoj.gov

*/s Jason Wu*  
Jason Wu  
Assistant United States Attorney  
Court ID No. A5502299  
99 NE 4th Street  
Miami, FL 33132  
 (305) 961-9226  
Jason.Wu@usdoj.gov

*/s Altanese Phenelus*  
Altanese Phenelus  
Assistant United States Attorney  
FL Bar No. 112693  
99 N.E. 4th Street  
Miami, FL 33132  
(305) 961-9375  
Altanese.Phenelus@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2026, I filed the foregoing document through CM/ECF and thus served all counsel of record.

/s *Jason Wu*
Jason Wu
Assistant United States Attorney