UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20104-BECERRA

UNITED STATES OF AMERICA

v.

ARCANGEL PRETEL ORTIZ, et al.,

    Defendants.
_____/

**UNITED STATES' REPLY IN SUPPORT OF
EXPEDITED MOTION FOR DEPOSITION PURSUANT TO RULE 15**

    Defendants Arcangel Pretel Ortiz, Antonio Intriago, Walter Veintemilla, Christian Sanon, and James Solages have all now stated that they do not oppose the Government's motion for a Rule 15 deposition of former Haitian judge Jean Roger Noelcius, who is unable to travel to the United States from Canada.  They respond, however, to ask the Court to bar the Government from asking certain questions of the witness (DE 1398).  The Court should grant the motion without limitations, for the reasons explained below.

## Argument

**The Court Should Allow the Government To Ask Mr. Noelcius About the Limits on Executing Haitian Arrest Warrants Based on His Own Experience and Practice.**

    To start, the Court should grant the requested Rule 15 deposition because, as the defendants concede, Mr. Noelcius will provide material testimony regarding (a) the circumstances in which he signed a warrant for President Moise's arrest, and which the defendants later found on their own and used as contemporaneous justification for their actions; and (b) Mr. Noelcius's whereabouts on July 7, 2021, when at least one defendant (Ortiz) claimed that Mr. Noelcius accompanied the group of assailants who attacked President Moise's home.

As part of the deposition, the Government intends to ask briefly about Mr. Noelcius's practices during his time as a Haitian judge and the ordinary procedure for executing a Haitian arrest warrant. The Government may inquire, for example, as to whether Mr. Noelcius would ever attend the execution of a warrant; whether he would ever expect a warrant to be executed by a group of U.S. citizens (including defendant Solages) and Colombian mercenaries; and whether he would expect such an execution to occur at 2 a.m. in the morning. The answers to those questions are all material because they will lend credibility to Mr. Noelcius's testimony that he was not present at President Moise's house. In fact, as a judge, he never attended an arrest, much less one happening at 2 a.m. in the morning, and he would never enlist the aid of armed foreign nationals to accomplish any arrest. In addition, the fact that arrests cannot occur at 2 a.m.—a basic practical limit in Haiti—not only lends credence to his testimony but also is a fair basis to contend that no other legitimate Haitian judge or prosecutor would do the same. In short, that testimony is equally material, and the Court should allow the Government to preserve it.

Different defendants level two objections to allowing these additional questions, but those objections miss the mark.

### A. Judge Noelcius's Testimony Is Not Expert Testimony and, Even If It Were, It Would Remain Material as to Four of the Five Defendants.

Defendant Veintemilla argues that Judge Noelcius's answers to these execution-related questions should be excluded as undisclosed expert testimony (DE 1398:2).

The disputed testimony would be lay opinion based on the witness's "particularized knowledge garnered from years of experience." *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003); *see* Fed. R. Evid. 701. A close analogy is the testimony of loan officers in mortgage or bank fraud cases. *See, e.g.*, *United States v. Hill*, 643 F.3d 807, 840-42 (11th Cir. 2011). In such prosecutions, it is possible to call an expert, who played

2

no role in the events at issue, to explain the rules and regulations surrounding loan applications. But it is also possible to call the loan officers who processed a defendant's fraudulent applications and to ask those officers about the basic requirements for loans. That testimony, even when couched in hypothetical questions, is permissible because it is based on those witnesses' "personal experiences" and "knowledge of their companies' policies and of the specific transactions at issue." *Id.* at 842. Testimony based on Mr. Noelcius's firsthand experience and his expectations about the precise warrant at issue is proper lay opinion under Rule 701, "even if the testimony also could have been admitted as expert testimony under Rule 702." *United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002).

The defendants' cited case, which notes that "expert testimony on foreign law is *permitted*," *Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1022 n.9 (11th Cir. 2024) (emphasis added), does not foreclose this questioning. The Government certainly could call a Haitian law expert, who did not produce the warrant at issue, to opine upon the validity or the proper manner of execution of that warrant. Under *Julmist*, such testimony would be permissible. Indeed, the Government has reserved the right to do so by notifying Veintemilla of the possibility that it will call a Haitian law expert at trial, both in its May 5, 2025, disclosures, and in its January 28, 2026, revised disclosures. *See* (DE 1040:9; DE 1367:9).[1] But that possibility does not prevent the Government from obtaining lay opinion from Mr. Noelcius as to his own warrants and his

---

[1] Those disclosures say: "The Government anticipates that the Haitian criminal law expert will testify generally about criminal arrest warrants in Haiti, including how they are issued, why they are issued, who can issue them, and who can execute them. . . . The Government anticipates that the Haitian criminal law expert, interpreting Haitian law, will testify about who can (and cannot) execute Haitian arrest warrants. Finally, the Government anticipates that the Haitian criminal law expert will testify . . . that none of the Colombian mercenaries nor defendant James Solages nor defendant Joseph Vincent were authorized to execute the arrest warrant for President Moise."

particularized knowledge about how his own warrants were executed during his decade-plus as a judge in Haiti.

Separately, even if the Court considers these aspects of Mr. Noelcius's testimony to be expert opinion, it should not limit the preservation of that testimony during this deposition. After all, the reason why the Court denied the Government's motion for reciprocal expert disclosures was that four of the five defendants never requested expert disclosures from the Government. *See* (DE 1338). Those four defendants—Ortiz, Intriago, Sanon, and Solages—cannot use that ruling as both sword and shield. The Government did not need to notice expert testimony as to those four defendants, so questioning Mr. Noelcius as a Haitian criminal law expert should be fair game. This testimony is, at a bare minimum, material as to those four defendants, who can make no Rule 16 notice objection to its use at trial.[2]

### B. Judge Noelcius's Testimony Is Relevant for Numerous Reasons.

In a startling tack, all five defendants argue that the disputed testimony is irrelevant: "Whether Haitian law prohibits non-Haitian nationals from serving arrest warrants or whether the Haitian Constitution prohibits the serving of an arrest warrant from 6 p.m. to 6 a.m. is utterly irrelevant if the government cannot demonstrate that the Defendants had any knowledge of such legal niceties" (DE 1398:2). To start, the Government anticipates showing that several defendants did know about that limit through trial testimony from co-conspirator Jacob Israel. Israel, a Haitian-American, expressly told defendants Ortiz, Intriago, and Veintemilla that it was well known that an arrest warrant cannot be lawfully executed between 6 p.m. and 6 a.m. in Haiti.

---

[2] In other words, even if Veintemilla were right about unnoticed expert testimony, the Court at most should give a limiting instruction that this particular portion of Mr. Noelcius's testimony should not be considered against him.

In any event, even without proof of actual knowledge of those limits, Mr. Noelcius's testimony would remain relevant because "ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 195 (1998). There is no exception to this basic precept that carves out Haitian law. A person cannot conspire to commit murder in Haiti and then contend that, because they never examined Haitian criminal law, they had no knowledge of whether homicide is illegal there.

The defendants lift their two cited authorities, *Rehaif v. United States*, 588 U.S. 225 (2019), and *Morissette v. United States*, 342 U.S. 246 (1952), far out of context. In those two statutory interpretation decisions, the Supreme Court concluded that certain criminal provisions must have an intent or knowledge element, even though not specifically spelled out in the statutory text, because of the general presumption that criminal laws target wrongful rather than unintentional behavior. Neither decision pertained to Rule 401 or discussed what testimony and evidence might be relevant in a trial or deposition.

Rule 401 relevance covers any evidence that makes more or less probable any "*fact* [that] is of consequence in determining an action." Fed. R. Evid. 401(b) (emphasis added). The term "fact" stretches much more broadly than the bare elements of a crime. And the disputed testimony bears on numerous facts of consequence to this case, including the elements. Among many others, here are four relevant uses for this testimony.

First, because the defendants exchanged the Noelcius arrest warrant (and various provisions of the Haitian Constitution) amongst themselves throughout June and July 2021, the jury should hear—from the judge who issued it—about the circumstances under which it was issued, possibility of that warrant ever being lawfully executed, and how a legitimate, lawful arrest takes place in Haiti pursuant Haitian law and the Haitian Constitution. That testimony would give

5

the jury a solid foundation—the issuing judge's particularized experience—to compare standard practice to the atrocity that occurred here.

Second, Mr. Noelcius's anticipated testimony explains why he did not accompany—and why he or any other Haitian judge would have never accompanied—the 22 Colombian mercenaries, defendant Solages, and others to President Moise's residence on July 7, 2021, *see* page 2 *supra*, which rebuts the defendants' contemporaneous claims to the contrary. The truth of the defendants' contemporaneous representations is, of course, a fact of consequence in any criminal case.

Third, that testimony also supports an inference that the defendants never collaborated with any lawful or lawful-acting Haitian judge, prosecutor, or police officer on their supposed "arrest" operation (or that the ones in the defendants' orbit were all participating in the same coup attempt), since any person familiar with these practices would never execute a supposed "arrest" at 2 a.m. with foreign mercenaries.

Fourth, the testimony also helps to establish the defendants' intent or deliberate ignorance. On the intent front, Israel's testimony will establish that defendants Ortiz, Intriago, and Veintemilla learned that a Haitian arrest warrant cannot be lawfully executed between 6 p.m. and 6 a.m.—a limit that Mr. Noelcius's testimony would help corroborate. On the deliberate ignorance front, the defendants spoke with an Ecuadorian lawyer, whose own Rule 15 deposition will be presented at trial (DE 890), and that lawyer told several defendants that they needed to consult with Haitian lawyers to ensure the legality of their plans in Haiti. Even assuming that one or more of the defendants did not know about these limits, their ignorance of, or disregard for, basic precepts of the Haitian Constitution, including Haitian criminal law and procedure, helps prove that the defendants never sought any Haitian legal counsel. They avoided learning what they even

now (after assassinating that nation's president) term the "legal niceties" of Haitian law. Their failure to do so would support a deliberate ignorance instruction, which the Government expects to request at trial.

## Conclusion

For these reasons, the Court should grant a one-day, virtual Rule 15 deposition of Mr. Noelcius without subject-matter limitations.

Respectfully submitted,

|  |  |
|---|---|
| JASON REDING QUIÑONES<br>United States Attorney | JOHN A. EISENBERG<br>Assistant Attorney General for the National Security Division |
| By: */s Sean T. McLaughlin*<br>Sean T. McLaughlin<br>Assistant United States Attorney<br>Court ID No. A5501121<br>11200 NW 20th Street, Suite 101<br>Miami, FL 33172<br> (305) 715-7642/7654<br>Sean.McLaughlin@usdoj.gov | */s Andrew Briggs*<br>Andrew Briggs<br>Trial Attorney<br>Court ID No. A5503251<br>National Security Division – Department of Justice<br>950 Pennsylvania Avenue<br>Washington, DC 20530<br>(202) 514-7739<br>Andrew.Briggs2@usdoj.gov |
| */s Jason Wu*<br>Jason Wu<br>Assistant United States Attorney<br>Court ID No. A5502299<br>99 NE 4th Street<br>Miami, FL 33132<br> (305) 961-9226<br>Jason.Wu@usdoj.gov | |
| */s Altanese Phenelus*<br>Altanese Phenelus<br>Assistant United States Attorney<br>FL Bar No. 112693<br>99 N.E. 4th Street<br>Miami, FL 33132<br>(305) 961-9375<br>Altanese.Phenelus@usdoj.gov | |

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 8, 2026, I filed the foregoing document through CM/ECF and thus served all counsel of record.

                                                        */s Jason Wu*
                                                        Jason Wu
                                                        Assistant United States Attorney